In the Matter of the Estate of FRANK WOLF, Deceased. BETSY WOLF, as Administratrix C. T. A. of FRANK WOLF, Deceased, Appellant; ETHEL WOLF, Respondent.

Appeal from a decree of the New York County Surrogate's Court, entered April 28, 1953, determining the measure of the widow's elective share of decedent's estate.

Decree affirmed.

CALLAHAN, J. (dissenting). This is an appeal from a decree of the Surrogate construing paragraph (a) of subdivision 1 of section 18 of the Decedent Estate Law as to the impact of taxes in computing the maximum amount receivable by a surviving spouse, who elects to take against a will.

The testator died on March 22, 1952, survived by his mother and also a wife, whom he had married on March 15, 1942. There was no issue of the marriage. The decedent's mother is the chief beneficiary under his will, which was executed on September 2, 1930. It makes no provision for the wife, who has duly filed a notice of election to take against the will. There is no testamentary direction as to the payment of taxes. The decedent left insurance policies providing a fund of $64,290.52, and directed that monthly payments be made to his widow for life, with contingent remainders to a nephew and niece.

The pertinent statute (Decedent Estate Law, § 18, subd. 1, par. [a]) provides as follows: "In exercising the right of election herein granted a surviving spouse shall in no event be entitled to take more than one-half of the net estate of the decedent, after the deduction of debts, funeral and administration expenses and any estate tax, and the words 'intestate share' wherever used in this section shall in no event be construed to mean more than one-half of such net estate."

The problem in this case is brought into focus by a comparison of the methods of computation proposed by the respective parties. They are agreed on the pertinent tentative figures (prior to submission to the taxing authorities) showing an estate as follows:

| | | |
|---|---:|---:|
| Gross estate (for tax purposes) .................. | | $478,772.11 |
| Less insurance—(Not qualifying for Marital Deduction — terminable interest — widow life tenant — no part of distributable estate) ................ | $64,290.52 | |
| Joint property ................................. | 2,394.70 | |
| Adm. Exp. .................................... | 23,794.45 | |
| Debts ........................................ | 13,164.93 | |
| Exemption .................................... | 300.00 | 103,944.60 |
| | | |
| Net estate ...................................... | | $374,827.51 |

At this point the parties differ as to the manner of determining the amount of the widow's interest under her election to take against the will.

Thus, the appellant mother computes the widow's elective share as follows:

| | | |
|---|---:|---:|
| "Net Estate for Distribution Subject to Taxes...... | | $374,827.51 |
| Less: N. Y. Estate Taxes ........................ | $4,193.58 | |
| Federal Estate Taxes ...................... | 53,497.09 | |
| | | |
| Total Taxes .................................... | | 57,690.67 |
| | | |
| Net Estate .................................... | | 317,136.84 |
| | | |
| Share of Widow (50%) .......................... | | $158,568.42 |

"Included in the sum of $57,690.67, the total estate taxes, is the sum of $12,624.67, which is the apportionment of Federal and New York Estate Taxes allocable to the Insurance Funds which did not qualify for Marital Deduction in which the widow, Ethel Wolf, is a life tenant."

On the other hand, the respondent widow computes the amount of her elective share as follows:

> "Net Estate subject to election by surviving spouse.. $374,827.51
> Elective share of surviving spouse................. 187,413.75
> Balance of Estate subject to taxes................. 187,413.75
> Insurance in which surviving spouse has a terminable
> interest subject to taxation .................... 64,290.52
>
> Net taxable estate ............................. $251,704.27
> Est. Federal Estate Tax ......................... $45,770.20
> Est. New York Estate Tax ....................... 3,385.22
>
> Est. Total taxes ................................ 49,155.42
> Est. tax allocable to Insurance Fund.............. 11,790.82
>
> Taxes to be paid by Named legatees............... $37,364.60."

The error, as I see it, in this second computation, is that respondent fails to deduct taxes until after the amount of her elective share is fixed.

We have no occasion, of course, to pass on the correctness of the foregoing figures, which are used merely for the purpose of illustrating the respective positions of the parties.

The Surrogate approved the contention of the widow in this case and stated that only such taxes as are allocable to the share of the surviving spouse are to be considered in making the computation under the statute aforesaid. This construction was said to follow the decision in *Matter of Peters* (275 App. Div. 950, 2d Dept.), which dealt with a situation that this court held to be distinguishable in *Matter of Ryan* (280 App. Div. 410).

The Surrogate considered that his construction was in accord with the provisions of section 124 of the Decedent Estate Law respecting apportionment of estate taxes, and that it makes allowance for any statutory exemption and the marital deduction recently granted under the Federal and State tax statutes (U. S. Code, tit. 26, § 812, subd. [e]; Tax Law, § 249-s).

In my opinion, however, the Surrogate was incorrect in not deducting taxes in computing the ceiling on the widow's elective share in this proceeding. In the *Ryan* case (*supra,* p. 413) we have previously held that "any estate tax" in the context of paragraph (a) of subdivision 1 of section 18 means "all estate taxes". The history of this section, which was adopted shortly before the apportionment statute and many years before the marital deduction statutes, indicates that the Legislature intended that *all* estate taxes be deducted in computing the ceiling on the elective share of a spouse. We may not alter that meaning by judicial construction merely because a different interpretation of the statute might seem more consistent with the spirit of later laws.

The net estate in the *Ryan* case (*supra*) was said to be approximately $3,300,-000 before taxes and $1,800,000 after taxes. Thus, one half of the estate after taxes ($900,000) was less than one third of the estate before taxes ($1,100,000). We modified the decree so as to provide that the widow in no event should receive more than 50% of the net estate after deduction of all debts, funeral and administration expenses, widow's exemption, and estate, transfer, succession and other death taxes payable upon the decedent's estate. The effect of our decision was to limit the wife's elective share to $900,000.

It is true that the will in the *Ryan* case (*supra*) provided that all taxes be paid out of the residuary estate, and thus no apportionment of taxes was required under section 124. In my opinion, however, this factual difference was not the controlling factor in our decision on the question of statutory construction involved in the case.

I consider the *Peters* case (*supra*) not only distinguishable, but its statement that only the allocable share of the tax was to be deducted under paragraph (a) of subdivision 1 of section 18, when read in the light of its facts, is not authority for the decision under review in this proceeding.

In the *Peters* case (*supra*) there were two children as well as the widow, who survived the decedent. Accordingly, the widow's share in intestacy was one third computed before taxes under section 83 of the Decedent Estate Law. The record discloses merely that the amount of the estate before taxes was $3,500,000. It does not disclose the amount of taxes in the estate or that the limit under paragraph (a) of subdivision 1 of section 18 would be reached. Of course, unless the ceiling applied, it would be improper to deduct taxes in fixing the one third payable in intestacy. In the *Peters* case, therefore, it was unnecessary, to pass upon the question now before us. Indeed, the Surrogate in *Matter of Peters* (204 Misc. 333) recognized this, for he said (p. 338): "Inasmuch as the intestate share to which petitioner is entitled is one third such limitation does not apply". And in determining the method of making the computation he relied on the decision of Surrogate DELEHANTY in *Matter of Goldsmith* (177 Misc. 298). There again the decedent left issue, and the decision was that the intestate one-third share was computed before taxes. It is a matter of interest, however, that Surrogate DELEHANTY deducted the full estate taxes in an illustrative computation of how the ceiling would be determined.

Several decisions of lower courts were cited by the Surrogate in *Matter of Peters* (204 Misc. 333, *supra*). None of them, however, involved a case where the ceiling of one half of the estate was reached, except *Matter of Hubbell* (65 N. Y. S. 2d 40) and there all taxes were deducted in fixing the ceiling of the elective share of the surviving spouse. It is interesting to note in passing that two of the Surrogates who were members of the commission expressed different views on the instant problem. Thus, in *Matter of Litt* (73 N. Y. S. 2d 368) Surrogate FOLEY indicated that all taxes must be deducted. On the other hand, in *Matter of Clark* (169 Misc. 202) Surrogate WINGATE said that only the taxes allocable to the share of the surviving spouse were to be considered. Both statements were entirely dicta, as neither case involved a situation where the ceiling was actually reached. Another recent decision indicating that all taxes are to be deducted in fixing the maximum is *Matter of Ittleson* (197 Misc. 786).

The courts of other States have also been called upon to consider the problem. (See *Matter of Uihlein*, 264 Wis. 362, and cases cited therein.) But these decisions furnish little aid for the controlling statutory provisions vary in the different States.

It should be noted that section 18 of the Decedent Estate Law became effective on September 1, 1930, although it had been passed by the Legislature of 1929 (see L. 1929, ch. 229). It was one of the first of a series of amendments to the Decedent Estate Law recommended by the Commission to Investigate Defects in the Laws of Estates. An examination of the commission's report casts considerable light on the present question of construction. It discloses that section 124 of the Decedent Estate Law, although it, too, became effective on September 1, 1930, was enacted by the Legislature of 1930 (see L. 1930, ch. 709). The Combined Reports of the Decedent Estate Commission says (p. 307) that in the Fall of 1929, after the passage of chapter 229 of the Sessions Laws of that year, section 124 was taken under advisement by a subcommittee of the commission, which included a representative of the State Tax Department. Various changes in the Tax Law were then proposed by the commission, which later became chapters 709, 710 and 711 of the Laws of 1930. Thus, section 124 was not

even considered until after paragraph (a) of subdivision 1 of section 18 had been adopted. It was clear, therefore, that the words " any estate tax " as used in paragraph (a) of subdivision 1 of section 18 were inserted in the law, before it was known that there would be any apportionment statute. Accordingly, these words should be construed in the light of the law as it stood in 1929 and previously, which made estate taxes, generally speaking, payable out of the residue of the estate without any apportionment, unless a will otherwise provided.

The commission was fully aware of the rule of law placing the burden of estate taxes on residuary legatees, for it referred to this situation in its report (see Combined Reports, *supra,* p. 338). It is true that this observation or note was written in 1930, and in respect to the proposal that was to become section 124. The commission, however, cited such cases as *Farmers' Loan & Trust Co.* v. *Winthrop* (238 N. Y. 488); *Matter of Oakes* (248 N. Y. 280), and *Matter of Hamlin* (226 N. Y. 407) all of which were decided before 1929. The *Oakes* case, in particular, shows that any reference to an " estate " tax in the light of the controlling decisions at the time referred to a tax on the estate as a whole. Such must be considered the meaning of the term in paragraph (a) of subdivision 1 of section 18, as it was enacted in 1929.

If we were construing paragraph (a) of subdivision 1 of section 18 as though section 124 and the marital deduction statutes had never been enacted, it seems reasonably clear that " any estate tax " would be held to mean " all estate taxes ". The difficulty in construction arises because we are attempting to construe paragraph (a) of subdivision 1 of section 18 after the broader and more beneficent statutes were enacted or came into effect.

Of course, we should attempt to reconcile all statutes bearing on the same subject. In this respect, however, there is a limit to the judicial prerogative of construction, which does not permit us to assign to an earlier statute a meaning different from that intended by the Legislature which adopted it. We may not find the law changed unless an intention to repeal or alter the prior statute by implication can be found in later enactments. We can discern no such legislative purpose here. If amendments to paragraph (a) of subdivision 1 of section 18 are needed to carry out the beneficent purposes of the apportionment and the marital deduction statutes, it is for the Legislature to rewrite it, particularly in view of the fact that the fiscal interests of the State might be affected.

This analysis of paragraph (a) of subdivision 1 of section 18 in the light of its history, and the conclusions drawn from the circumstances surrounding its adoption, appear to be reinforced by consideration of the purpose of the law. Paragraph (a) of subdivision 1 of section 18 was intended merely to place a limit or ceiling on the sum that a surviving spouse should receive in the event of an election to take against the will. It was not a taxing statute and did not purport to state a formula for the fixation or imposition of a tax. True, it placed the impact of taxes to some degree on a surviving spouse by providing that the most such a person could receive was one half the net estate as in intestacy, but after taxes. That is apparently what the Legislature and the commission aforesaid intended. It could not be foretold that later marital deduction statutes might have some conflicting effect.

Prima facie, the elective share of a surviving spouse is the share she would have received as in intestacy pursuant to section 83 of the Decedent Estate Law. The ceiling provided in paragraph (a) of subdivision 1 of section 18 was to be applicable only where the intestate share would be more than one half of the *net* estate. The limiting statute prevented the receipt of any such excess, and also required that estate taxes be deducted in computing the net estate. although

under section 83 taxes were not taken into consideration in fixing the intestate share.

Ordinarily (though exceptions exist, see *Matter of Ryan, supra*), the occasion for applying the ceiling provisions of paragraph (a) of subdivision 1 of section 18 would be a case where the decedent left no issue. When one half was reached, the Legislature apparently felt that a limit or ceiling was proper and required that "any estate taxes" be considered in the computation thereof. They used the broad and comprehensive word "any", and the likewise comprehensive term "estate" (as distinguished from "transfer" or "inheritance") in describing the death taxes to be deducted. Evidently, the intent was that the surviving spouse under such circumstances should bear the impact of taxes by having all of them deducted, when the maximum of the elective share was reckoned. If it was intended that only an allocable share of the tax was to be used in computing the maximum, the statute could have readily so provided.

The recent amendment to section 124 by the addition of subdivision 3 does not require a different construction to be placed on paragraph (a) of subdivision 1 of section 18. It does not repeal or modify the earlier law by implication. Section 124 will be complied with under the construction here suggested. The marital deduction does inure to the benefit of the electing spouse. When the tax on the estate is computed, due allowance will be made for such deduction. Aside from the effect of taxes on the ceiling, the widow takes her share free of taxes.

If there are situations where the heavy burden of taxes on the gross estate appears to create harsh results, the matter is one for legislative consideration.

For the foregoing reasons, I vote to modify the decree appealed from so as to accord with the method for computation of the widow's share set forth in the petition.

Peck, P. J., Dore, Breitel and Bastow, JJ., concur in decision; Callahan, J., dissents and votes to modify, in opinion.

Decree affirmed, with costs. [204 Misc. 356.]