In the Matter of the Construction of an Indenture of Trust, Dated October 18, 1963, as Amended, Made by ALFRED JURZYKOWSKI. ULRICH WEHRLI, as Substitute Successor Trustee, Appellant; SCHRODER TRUST COMPANY, as Substitute Successor Trustee, et al., Respondents.

First Department, May 25, 1971.

*James N. Vaughan* and *Edward F. Vaughan* of counsel (*Vaughan & Lyons,* attorneys), for appellant.

*J. Kenneth Campbell* of counsel (*Donald M. Dunn* with him on the brief; *Alexander & Green,* attorneys), for Schroder Trust Company, respondent.

*Amalya L. Kearse* of counsel (*Joseph Trachtman, Alan H. McLean* and *John A. Golden* on the brief; *Hughes Hubbard & Reed,* attorneys), for Louise Jurzykowski and others, respondents.

*Alexis C. Coudert* of counsel (*John Carey* on the brief; *Coudert Brothers,* attorneys), for Walter A. Thompson, respondent.

KUPFERMAN, J. The question is as to the status of petitioner Ulrich Wehrli, a Swiss national, as possible substitute successor trustee under an indenture of trust dated October 18, 1963, which trust is now said to be worth some $17,000,000.

Alfred Jurzykowski, a Brazilian, set up the trust with the First National City Trust Company (Bahamas) Ltd. It was amended twice, and while a third amendment was pending, the settlor died in May, 1966.

With the death of the settlor, the bank's trusteeship terminated and the trust's Bahamas situs changed to the District of Columbia. The successor trustees had the right to change the situs, and they did, to New York City. The trust will continue until 1984 (it could have continued longer, i.e., for the life of the settlor's widow, Milena Jurzykowski, but she died recently).

Upon the settlor's death, the trust agreement provided that Milena Jurzykowski, the widow, Andrew Rey and William E. Carey, Jr. become successor trustees.

The settlor left two daughters, each of whom becomes a trustee on reaching the age of 21. One of the daughters, Yolande Louise Jurzykowski, reached her majority in 1968 and is a trustee. The other, Milena Christine Jurzykowski, a minor, appears in this proceeding by a guardian ad litem.

In June, 1967, Rey resigned as trustee. Despite the elaborate provisions of the trust instrument, death or incapacity were covered, but not, *in haec verba,* this resignation. If we can construe a resignation as being an incapacity, that created a vacancy. Under the terms of the trust, as amended, paragraph 6(i), it was to be filled by the petitioner Ulrich Wehrli as a substitute successor trustee. Upon the death or incapacity of the second successor trustee (in this case William E. Carey, Jr. was removed, with his consent, for physical incapacity in January, 1969), a bank or trust company was to be designated by the remaining successor trustees. When Mr. Carey was removed, Milena Jurzykowski designated Schroeder Trust Company, which filed a duly executed acceptance, and, to the extent that he had any position, Ulrich Wehrli has acquiesced in this choice. By a further provision in paragraph 6 (i), Milena Jurzykowski had the personal right, if she so chose, during her lifetime and after the designation of a trust company, to appoint any individual trustee to fill any vacancy created by death or incapacity. In accordance with this provision, Mrs. Jurzykowski designated Dr. Eugene G. Lobert and Dr. William Pyka to fill the Rey and Carey vacancies, and they filed their acceptances. Ulrich Wehrli objects to the latter two appointments and contends that either he succeeded to the Rey vacancy if that was an incapacity, or to the Carey vacancy, which is conceded to be an incapacity.

Paragraph 6(d) of the trust agreement requires that a successor trustee qualify as such by delivering or mailing written

acceptance duly acknowledged to Mrs. Jurzykowski. Mr. Wehrli did not do this and indicated a position with respect to the trust only in February, 1969, in reply to a letter from the Schroder Trust Company.

It is contended by the guardian ad litem that Wehrli, not having acknowledged his original 1967 accession as a successor trustee, has waived any position with respect thereto, and it is further contended on behalf of the family beneficiaries of the Jurzykowski trust and by the various other parties involved in the litigation that he is in a conflict of interest position with the beneficiaries because of difficulties with him in connection with his management of Liechtenstein Anstalts, which are in the nature of trusts, established by the settlor.

It seems to be conceded that if a trustee would be removed for any reason that the same grounds can be used to prevent his qualification. However, it is contended on behalf of the petitioner that summary judgment should not have been granted denying him his claimed position. It would seem that the facts have been sufficiently developed on the papers so we can decide the case on the record before us. (*Matter of Angell*, 268 App. Div. 338 [3d Dept., 1944] affd. without opn. 294 N. Y. 923.)

The friendly relationship shown to exist with petitioner early in 1966 prior to the controversies and prior to the death of the settlor, has not continued due to the Liechtenstein Anstalts situation. Among other problems therein, which lead to the conclusion that any hostility has a rational basis, are that petitioner failed to get a receipt for a $50,000 payment, a question of his responsibility for a $100,000 loss claimed, delay in making a distribution to this trust of $14,000,000 from the Anstalts, and litigation commenced by Milena Jurzykowski in Switzerland against the petitioner after she had removed him from authority with respect to the Anstalts, to obtain release of whatever books and records may exist with respect to the operation of the Anstalts.

While it may be that the petitioner took no action with respect to being involved with the trust until 1969, because there was a legal question of his proper succession to the Rey vacancy, it could be that his interest was aroused because he was in litigation in Switzerland over the contentions with respect to his conduct of the Liechtenstein Anstalts.

A conflict of interest would not be mitigated, as suggested, by the death of the widow. The hostility, moreover, continues through the junior members of the family, one of whom is already a trustee, and it could interfere with the proper administration

of the trust. (*Matter of Edwards,* 274 App. Div. 244 [4th Dept., 1948].)

Although they have been raised, we have not pursued the contentions that Ulrich Wehrli is disqualified because his ability with the English language is poor, or because he is a Swiss resident and national with a full time banking occupation in Switzerland, and it would be difficult under Swiss banking laws to determine his financial involvement. It is assumed that the testator was familiar with these factors at the time he included Wehrli's name in the trust instrument as a possible substitute successor trustee, and his determination cannot be ignored. (*Jessup* v. *Smith,* 223 N. Y. 203, 207 [1918] ; *Matter of Leland,* 219 N. Y. 387, 393 [1916].)

Judgment granting summary judgment should be affirmed, with costs and disbursements to all parties filing briefs, payable out of the trust estate.

STEUER, J. (dissenting). In 1963 the settlor Alfred Jurzykowski entered into an agreement with First National City Trust Company (Bahamas) as trustee. The instrument was twice amended and the provisions referred to are as they appear in the second amendment of March 4, 1965. The agreement provided that upon the death of the settlor the term of the trustee should end and the bank should be succeeded by three trustees: the settlor's wife Milena, Andrew Rey and William E. Carey, Jr., described in the instrument as successor trustees. Each of the settlor's two daughters was to become a trustee when she became 21 years of age. On the death of the settlor the trust, for purposes of disposition and remainder, became three trusts. Such provisions, however, are not in question here, the present controversy having to do solely with the persons who should be recognized as trustees.

The instrument provides (par. 6[i]) that if any of the successor trustees shall die or be removed for physical or mental incapacity (for which removal an elaborate machinery is provided), then Ulrich Wehrli, the petitioner herein, '' shall thereupon become a substitute Successor Trustee in the place and stead of the said deceased or incapacitated Successor Trustee.'' In the event that another of the successor trustees dies or becomes incapacitated, the remaining successor trustees shall designate a bank or trust company to succeed him. After the designation of a bank as successor trustee, if any individual successor trustee dies or is removed for incapacity he need not be replaced, but if the settlor's widow so elects she may fill the vacancy.

The settlor died in 1966. The named successor trustees signified their acceptance by filing an acceptance in accord with paragraph 6(d) of the instrument. One year later Andrew Rey submitted his resignation. While resignation of a successor trustee is provided for in paragraph 6(a) of the instrument, there is no provision for the appointment of a substitute as there is in the instance of death or incapacity. Petitioner was notified. At that time the remaining trustees, the widow and Mr. Carey, took the position that as there was no provision for replacing a trustee who had resigned, no vacancy existed. The widow did sign an instrument appointing Dr. Lobert as successor trustee in the event of her own death or Mr. Carey's death or removal. Shortly thereafter counsel for the trustees wrote petitioner in answer to his inquiry as to his status of trustee that as there was no death or incapacity there was no vacancy and that he had no interest in the trust.

In January, 1969 Mr. Carey was removed for incapacity as trustee in accord with the procedures set out in the trust instrument. Immediately the widow appointed Schroder Trust Company as successor trustee. At the same time or shortly thereafter she appointed Drs. William Pyka and Eugene Lobert as successor trustees. Petitioner was notified of these events at the end of January. He promptly replied that while the proper trustees were Mrs. Jurzykowski, her daughter Yolande who had attained her majority, and himself, he had no objection to the Schroder Trust Company being a trustee. He did object, however, to the appointment of the doctors. Thereafter petitioner sought information as to the documents necessary to assert his claim but was passed from attorney to attorney who denied him access. Suit was instituted in December, 1969.

Petitioner seeks a ruling on his status as trustee and the status of Drs. Pyka and Lobert.

Initially, it is quite clear that when the first vacancy should occur among the substituted trustees, the latter had no choice or discretion as to who should be the replacement. The instrument states unequivocally that it should be the petitioner. What is not so clear is whether a vacancy was created by Mr. Rey's resignation. Assuming for the moment that no vacancy was thereby created, the proper trustees would have been Mrs. Jurzykowski and Mr. Carey. On Mr. Carey's removal the petitioner would have taken his place. If, on the other hand, the resignation did create a vacancy, the rightful trustees would have been the widow, Mr. Carey and the petitioner. On Mr. Carey's removal the Schroder Trust Company would have been entitled to be appointed.

Several reasons have been advanced by various parties why the succession provided for by the trust instrument should not be followed, or rather why the disregard of those provisions by the successor trustees should be judicially confirmed. Of these only two require any discussion. The first, advanced solely by the guardian ad litem for the younger daughter, is in the nature of laches — the failure of the petitioner to assert his rights and follow them up by filing an acceptance of the trust. The argument is as follows: Special Term found that the intent of the instrument was that the resignation of a successor trustee created a vacancy. Therefore when a vacancy occurred in 1967 it was incumbent on petitioner to then assert his rights, which he did not do for two years. The other respondents have not joined in this argument, for very evident reasons. When the resignation occurred they took the position that there was no vacancy and so advised the petitioner, thereby successfully deterring him from asserting any rights. To assert otherwise now would not only show bad faith but would demonstrate that the attorneys who now represent the trustees (other than the corporate respondent) and who gave it as their opinion, on which the then successor trustees acted, were not influenced by the applicable law but had other motives. Obviously petitioner cannot be charged with laches for failing to insist on a right to which there was a colorable objection, which objection was supported by the remaining successor trustees.

After the removal of Mr. Carey there was an almost 11-month interval before this proceeding was instituted. However, from the time petitioner learned of the incident and the institution of the action he continuously asserted his claim and sought access to the documents in possession of the respondents and Mr. Carey, so that his claim could be substantiated. These were refused him. It is difficult to see how a claim of laches can be founded on a withholding of information, and in fact no one but the guardian advances the claim.

Actually the defense to the petition rests on the proposition expressed in various ways that Mrs. Jurzykowski did not want petitioner to be a trustee and that this personal animosity would be inimical to the interests of the trust. Primarily it should be recognized that it is the settlor and neither the beneficiary nor the court who has the right to say who shall be a trustee. The fact that beneficiaries may not like him and even believe him to be obstructing the best interests of the trust does not warrant going behind the settlor's wishes (cf. *Jessup* v. *Smith*, 223 N. Y. 203). Part of the objection to Mr. Wehrli is that he is a Swiss national who resides at a distance. This was well known to the

settlor when he made the appointment, and any assumption that the estate will suffer on account of this is clearly contrary to the views of the settlor. In the light of the settlor's acknowledged and proven ability in the field of finance, an overriding of his designation on this ground would be an act of judicial arrogance. "But the testator still enjoys the right to determine who is most suitable among those legally qualified to settle his affairs and execute his will, and his solemn selection is not lightly to be disregarded. Appointment is not to be refused merely because the testator's selection does not seem suitable to the judge." (POUND, J., *Matter of Leland,* 219 N. Y. 387, 393.)

Mostly the contention is based on a degree of hostility of Mrs. Jurzykowski toward the petitioner that, it is claimed, would interfere with the administration of the trust. It appears that this unilateral hostility, which undoubtedly existed, stems in great part from Mr. Wehrli's administration of certain Liechtenstein Anstalts — which are similar in nature to trusts. Mrs. Jurzykowski felt that the amount allotted to her by Mr. Wehrli as trustee was less than it should have been, and that in his reply to her complaint on this score Mr. Wehrli did not show all the respect and courtesy that was her due. The merits of this objection are not sufficiently developed in the record to warrant a determination; but it is beyond question that one of the prime purposes of a trust, where there is discretion as to the amount to be paid out, is to substitute the judgment of the trustee for that of the beneficiary. In addition, Mrs. Jurzykowski found fault with the petitioner's handling of a matter with a third person in connection with one of the Anstalts. The matter is now in litigation in the Swiss courts, and the soundness of Mr. Wehrli's conduct of the affair cannot now be appraised. Lastly, and probably most important, the widow preferred the doctors she appointed, whom she deemed more sympathetic and friendly than Mr. Wehrli.

This is not to deny that there are instances where the court in the interest of orderly administration should refuse to allow a trustee to qualify. But such a step should not be taken absent proof that administration will otherwise be materially hampered. The balance between yielding to the settlor's directions and providing for an orderly administration is often not easily reached. Most of the cases dealing with the subject are instances in which a dissatisfied beneficiary, sometimes joined by cotrustees, has sought the removal of a trustee. Respondents here argue, with plausibility, that the same rules should govern an application by a named trustee to qualify, as it is a futile act to allow one

to qualify where grounds already exist for his removal. The difficulty with respondents' position is that no good grounds have been shown. Personal differences between a *cestui* and a trustee, even of a serious and personal nature, are not grounds (*Burke* v. *Baudouine*, 190 App. Div. 186, affd. 232 N. Y. 532). Nor is dissatisfaction with the way the trustee conducts the affairs of the estate (*Haight* v. *Brisbin*, 96 N. Y. 132). Furthermore, we have been informed that Mrs. Jurzykowski, the principal objector to Mr. Wehrli, is now deceased, and her personal hostility to him can no longer be a factor. While the daughters have dutifully echoed her antipathy in affidavits carefully prepared for them, there is no basis shown for this attitude. As far as is shown, neither has ever had any dealings with Mr. Wehrli, and their objection is apparently purely a formal attempt to show a united front.

We do not discount the possibility that respondents might be able to show a proper case to block the appointment of petitioner, but merely point out that no case warranting determination has been made out on the papers submitted. This is true as to certain aspects only. We can see no possible theory on which the appointments of Drs. Pyka and Lobert can be upheld except that if Mr. Wehrli should fail to qualify, and no one else has objected, they would retain their offices by default. The efforts to justify their appointments have been of the tongue in cheek variety. The claim that a clause in the trust instrument giving the widow the right to make appointments applies, purposely loses sight of the fact that the provision is an exception to the provision that vacancies occurring after the qualification of a trust company need not be filled. The clause gives the authority to the widow to fill such vacancies if she so desires. It refers to no other situation, has no bearing on the issues, and confers no authority for the appointments purportedly made. Furthermore, the attempt to justify the appointment of two trustees to one vacancy was totally inadequate.

The order granting summary judgment should be reversed and the petition reinstated.

Stevens, P. J., and Capozzoli, J., concur with Kupferman, J.; Steuer, J., dissents in an opinion in which Nunez, J., concurs.

Judgment, Supreme Court, New York County, entered on November 20, 1970, affirmed, with one bill of $50 costs and disbursements to all parties filing briefs, payable out of the trust estate.