Dean MATHEY et al., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 72–1400.

United States Court of Appeals, Third Circuit.

Argued Feb. 12, 1973.

Reargued En Banc Nov. 16, 1973.

Decided Jan. 29, 1974.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Paul M. Ginsburg, Virginia H. Gallagher, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee; Herbert J. Stern, U. S. Atty., of counsel.

Donald B. Kipp, Pitney, Hardin & Kipp, Newark, N. J., for plaintiffs-appellants; Joel A. Wolff, Newark, N. J., of counsel and on the brief.

Argued Feb. 12, 1973.

Before VAN DUSEN and ADAMS, Circuit Judges, and BRODERICK, District Judge.

Reargued Nov. 16, 1973.

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge:

Plaintiff taxpayers, the executors of the estate of the late Helen H. Mathey, seek to recover federal estate taxes, interest paid thereon, and administrative and legal fees in the amount of $390,402.50, which they claim were illegally assessed and collected by the Government.[1]

The Government contends, and the district court concluded, that the value of eleven *inter vivos* trusts created by

Mrs. Mathey were includable in her gross estate under section 2038 of the Internal Revenue Code,[2] for the purpose of computing federal estate taxes. We must evaluate the propriety of that conclusion.

On April 20, 1955, Mrs. Mathey, then 63 years old, set up under New York law eleven trusts for the benefit of her grandchildren, the youngest of whom was then two years of age. Two additional trusts were created in 1961 and 1962, for two more grandchildren.[3] The Empire Trust Company (later merged into the Bank of New York) was named, and continues to serve, as trustee. All thirteen trusts were identical, with the exception of the beneficiaries' names and their birth dates. When Mrs. Mathey died in September, 1965, eleven of the thirteen trusts remained in existence (two grandchildren having previously reached the age of distribution) and were valued at $808,018.52.

Mrs. Mathey died testate, and a federal estate tax return was filed by her executors in December, 1966, revealing a gross estate valued at $1,811,198.02, and an estate tax liability of $484,599.19. After audit and examination, the Government took the position that Mrs. Mathey's gross estate should include, for federal estate tax purposes, the value of the eleven *inter vivos* trusts in existence at the date of her death. The Government's position resulted in a claimed net deficiency in estate tax liability of $318,883.17. Mrs. Mathey's executors paid this sum, together with $41,769.33 in interest, and then filed suit in the district court for a refund.[4]

The controversy over the includability of the trusts in Mrs. Mathey's gross estate stems from a clause in each of the

---

1. The plaintiffs brought suit pursuant to section 7422 of the Internal Revenue Code, 26 U.S.C. § 7422.

2. 26 U.S.C. § 2038.

3. The creation of the trusts was motivated, at least in part, by the 1954 legislation making the annual $3,000 gift tax exclusion available in connection with certain forms of gifts in trust for minors. In 1954 the Code,

for the first time, provided that, under certain conditions, gifts in trust for minors would not be considered gifts of future interests and thus would fall within the $3,000 annual gift tax exclusion. *See* 26 U.S.C. § 1622.

4. The district court's jurisdiction was based upon 28 U.S.C. § 1346(a)(1).

trust agreements giving Mrs. Mathey the power to change the trustee.

"ARTICLE SIXTH: The Grantor reserves to herself and after her death to her Executors the right at any time and from time to time during the continuance of the trust to change the Trustee hereunder after ten days notice in writing which shall specify the name of the trustee to be substituted, the date of such substitution and the time and place within the City of New York where the securities then constituting the trust estate are to be delivered to the substituted trustee and to require the trustee, upon receiving such notice to transfer and deliver to the substituted trustee at the time and place within the City of New York specified in such notice any and all securities, cash and other assets constituting the trust after deducting its lawful compensation and expenses.

"Upon its removal as above provided, any Corporate Trustee, shall be entitled to reimbursement from the trusts hereunder for all loans and advances, if any, theretofore made by it and all expenses, including expenses incurred by it in connection with the settlement of its accounts as Trustee. Likewise in the case of the change or removal of any corporate Trustee, it shall be entitled to all fees to which it would be entitled if the trust were fully administered or if the trusts for which it is Trustee were then to terminate."

The Government contends that, under Article Sixth of the trust indentures, Mrs. Mathey retained the unrestricted power to appoint *herself* as successor trustee and that, because under the terms of the trust instruments the trustee has the power to pay trust income and corpus to the beneficiaries before the date set for corpus distribution, the trust corpora were includable in her gross estate. In support of this proposition, the Government points to section 2038 of the Code, which provides in part:

". . . The value of the gross estate shall include the value of all property . . . .

. . . . . .

". . . To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person . . ., to alter, amend, revoke, or terminate . . . ."

The taxpayers, on the other hand, assert essentially that (1) in view of the terms and design of the trust agreements, Mrs. Mathey retained the power to name only a *corporate* trustee as successor to the original trustee, and under no circumstances intended to or did reserve the right to substitute herself as trustee; and (2) even assuming that Mrs. Mathey did retain the power to substitute herself as trustee, a New York court would not have permitted her to act in that capacity.

The district court dismissed the taxpayers' complaint, holding that Mrs. Mathey did in fact retain the power to appoint herself successor trustee and that New York law erected no absolute bar to her exercise of that power. It concluded that the aggregate value of the eleven trusts was includable in her gross estate for federal estate tax purposes. We affirm.

Section 2038, quoted above, focuses upon the retention by a grantor of the *power* to "alter, amend, revoke, or terminate" a trust. If such power exists at the date of the grantor's death, the value of such trust is includable in the decedent's gross estate. The taxpayers concede that, under the trust agreements involved here, a power in the grantor to name herself as trustee would amount to a power to "alter, amend, revoke or

terminate." [5] The taxpayers agree, too, that such a power, if it exists, need never actually be exercised for the trusts to be includable in the decedent's estate.[6] Their argument, in essence, is that the facts and circumstances of this case make clear that Mrs. Mathey intended to retain no such power, that the trust agreements cannot be read to provide for a retention by her of such power, and that New York law would bar her from ever exercising any such power. The trust agreements do not expressly forbid Mrs. Mathey from appointing herself as trustee.

At the request of the taxpayers, and over the objection of the Government, the trial court ruled that oral testimony would be permitted on the question of the meaning of the language of the trust indentures and on the practice in the New York courts regarding the service of trustees. Pursuant to this ruling, the parties introduced extensive expert testimony concerning the language in the trust indentures that refers to the trustee and its successor or successors and specifically the use of the pronoun "it." The taxpayers assert that use of the pronoun "it" establishes that, under the trust agreements, Mrs. Mathey could name only a corporate trustee as successor to the original trustee, inasmuch as a natural person is more commonly referred to as "he" or "she." The district court found that use of the neuter pronoun did not signify an intent on Mrs. Mathey's part to allow a corporation only to be named as a successor trustee, and that therefore an individual could be substituted for the original trustee.

We cannot say that the district court's finding as to the meaning of the word "it" in the trust agreements was clearly erroneous.[7] The Government's expert testified that:

> "[T]his is a grammatical convention used by every experienced draftsman of a trust or will, that the personal pronoun referring to the trustees follows the section [sic] of the original trustee.
>
> .    .    .    .    .    .
>
> "Again, in my opinion, no inference would be permissible as to intention concerning the nature of a successor trustee generally from the mere use of 'its' in this connection." [8]

Based on such evidence, and after gauging contrary testimony and the persuasiveness of the witnesses for both parties, the district court could reasonably have found that Mrs. Mathey's use of the word "it" was not intended to limit successor trustees to corporations.[9]

In an effort to demonstrate that Mrs. Mathey intended to restrict the trustee to a corporation, the taxpayers point to the trust provision in Article Sixth dealing with compensation for the trustee.

---

5. Under each trust agreement the trustee has the wholly discretionary power to pay the beneficiary all or part of the net income, accumulated income, and principal of the trust. Such power, if reposed in the grantor as an individual or as a trustee, warrants inclusion of the trust in the grantor's estate under § 2038. See Estate of Varian v. Com'r of Internal Revenue, 396 F.2d 753 (9th Cir.), cert. denied, 393 U.S. 962, 89 S. Ct. 402, 21 L.Ed.2d 376 (1968); Loughridge's Estate v. Com'r of Internal Revenue, 183 F.2d 294 (10th Cir. 1950); cf. Florida Nat'l Bank v. United States, 336 F.2d 598 (3d Cir. 1964); Miller v. United States, 325 F.Supp. 1287, 1292–1293 (E.D.Pa.1970).

6. See Treas.Reg. § 20–2038–1(a)(3); see also Van Beuren v. McLoughlin, 262 F.2d 315, 316 (1st Cir. 1958); cert. denied, 359 U.S. 991, 79 S.Ct. 1120, 3 L.Ed.2d 979 (1959); Cum.Bull.Rev.Rul. 73–21, 1973 Int. Rev.Bull. 1973–2, p. 15; cf. United States v. Winchell, 289 F.2d 212 (9th Cir. 1961).

7. See Rule 52(a), Federal Rules of Civil Procedure. In the context of this litigation, the meaning of the word "it" is relevant to a determination of the grantor's intent as expressed in the trust agreements, and thus is properly considered a question of fact. The district court so understood the question (Tr. 116).

8. Tr. 116–119.

9. The taxpayers have brought to our attention not a single case holding that use of the pronoun "it" in trust agreements invariably, or even usually, signified only a corporate trustee.

However, contrary to what the taxpayers maintain, the district court concluded that Article Sixth of the trust agreements may be appropriately construed to provide for the compensation of a removed *individual* trustee as well as a corporate trustee. In addition, the district court determined that the absence of a provision empowering the trustee to hire and remunerate accountants, custodians, and investment advisers does not indicate that the trustee had to be a corporation. We find no fault with this conclusion of the trial court.[10] Indeed, the reference in the first paragraph of Article Sixth to "trustee," in contradistinction to the second paragraph's use of the phrase "corporate trustee," might well be taken as evidence that the trust agreements contemplated *both* individual and corporate trustees.

Next, the taxpayers maintain that a fair reading of the trust agreements, coupled with uncontradicted testimony as to Mrs. Mathey's circumstances and state of mind, compel the conclusion that she could not reasonably be found ever to have intended to name herself as successor to the original trustee.

The taxpayers point out that Mrs. Mathey's personal portfolio was managed by The Empire Trust Company, and she had no evident interest in corporate reports, proxy statements, financial journals, or the like. Her energies were devoted primarily to her family and to certain charities. In short, the taxpayers claim that it is plausible to assume she never intended actually to name herself as trustee. But such an assumption

is largely irrelevant in an application of section 2038; that statute looks to the existence of a power in the grantor to "alter, amend, revoke or terminate" the trust, not to the likelihood that the grantor will ever exercise such power.[11]

The district court properly conceived that its task, then, to ascertain whether the trust agreements reposed the power in Mrs. Mathey to name herself trustee, not whether there was a substantial likelihood that she might actually do so. The district court determined that, irrespective of her intent to name herself, the trust indentures would not have prevented her from doing so. Such a determination is a sufficient basis for inclusion of these trusts in her estate under section 2038.[12]

Whatever Mrs. Mathey's intent may have been, we think it worth noting that her husband, plaintiff Dean Mathey, who had acted as his wife's agent in the drafting of the trusts,[13] testified that *he* intended for Mrs. Mathey to retain the power to name herself as successor trustee. Mr. Mathey stated:

"... I thought, yes, this—since Mrs. Mathey was the donor it was very logical that she should be a trustee along with the bank."

. . . . . .

"I had Mrs. Mathey as the donor, as a donor, as an honorary trustee—Furthermore if there were something that was done—refused to be done in this trust, then Mrs. Mathey could come to me or I would go to her and say, 'Look, we ought to change this trustee.'

---

10. The determination of the import of the compensation clauses may present mixed questions of law and fact, inasmuch as New York law regulates the compensation to be paid a trustee. This Court, on appeal, has plenary power to review the district court's determination concerning what state law is, and so we are not bound by the "clearly erroneous" standard of Rule 52(a). *See* 5 Wright and Miller, Federal Practice and Procedure § 1253 (1969); *cf.* Rule 44.1, Federal Rules of Civil Procedure. Whether the significance of the compensation clauses

is deemed a question of fact, of law, or of both, there is no basis for concluding that the district court erred regarding this point.

11. *See* Treas.Reg. § 20–2038–1(a)(3).

12. *See* Estate of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (3d Cir. 1971); Zentmayer's Estate v. Commissioner of Internal Revenue, 336 F.2d 488 (3d Cir. 1964).

13. *See, e. g.*, Tr. 31.

"This is awfully simple, taking care of a trust, this is my experience, and very logical for Mrs. Mathey to be a trustee along with the bank."

. . . . . .

THE COURT: "Do you know whether she was named as a trustee in that indenture Mr. Kipp [the tax-payers' counsel] has presented to you?

MR. MATHEY: "She was a trustee, yes . . . ." [14]

Mr. Mathey added that he saw to it that the trust instruments were drafted in accordance with his wishes. Though it was contended that Mr. Mathey may have been somewhat confused on the witness stand, the district court, having viewed his demeanor, could properly have relied on Mr. Mathey's testimony in construing the language and import of the trust agreements. In any event, there is no basis for saying that the trial court's finding regarding intent was clearly erroneous.

The taxpayers' ultimate contention is that even assuming Mrs. Mathey had retained the power to name herself trustee, a New York court would not have allowed her to exercise such a power, because of her age and lack of financial background and interest.

Taxpayers have not demonstrated, either in the district court or before this Court, that New York law absolutely bars a person in Mrs. Mathey's circumstances from naming herself as a trustee or from proceeding to serve in a fiduciary capacity. The most that can be said with assurance is that a New York court, after consideration of all the facts and circumstances, might have deemed Mrs. Mathey unsuitable as a trustee. That New York law vests such a power in its courts is undoubted; [15] that those courts might have exercised that power would appear to be irrelevant.

Were it the case that New York law rendered it a certainty that Mrs. Mathey could not serve as a trustee, we could not say that she retained the "power" to affect the trusts within the meaning of section 2038. But the determination of suitability to serve as a fiduciary is left to the discretion of the state courts.[16] There is thus no "objective standard" [17] by which a federal court can establish that, beyond any doubt, Mrs. Mathey would not have been permitted to act as trustee.[18]

Moreover, there was expert testimony in the district court, which we have carefully reviewed, indicating that the New York courts would not have disqualified Mrs. Mathey from acting as successor trustee. (Tr. 135). In addition, it should be noted that Mrs. Mathey had served as executrix of her first husband's estate, was mentally and physically competent, and was herself the grantor of the trusts, facts which would, according to the testimony, have weighed in her favor in determining her suitability as a trustee.

Accordingly, we affirm the district court's determination that New York law did not strip Mrs. Mathey of her power to alter, amend, revoke or terminate these trusts.

While we sustain the judgment of the district court that the eleven trusts are includable in Mrs. Mathey's gross estate

---

14. See Tr. 42–43, 44–45, 46.

15. See, e. g., Guaranty Trust Co. of New York v. Mackey, 178 Misc. 862, 36 N.Y.S.2d 535 (Sup.Ct.1942).

16. Application of Wehrli, N.Y.L.J., Nov. 5, 1970 (not otherwise reported).

17. Estate of Stewart v. Commissioner of Internal Revenue, supra, 436 F.2d at 1285.

18. The determination of the effect of New York law on the trust agreements is a question of law. See Note 9, supra. Under New York law, the question of the suitability of a trustee to serve is essentially one of fact, guided by statutory considerations. It is clear that the applicability vel non of section 2038 cannot be made to turn on speculation concerning the outcome of a purely hypothetical New York litigation. The whole thrust of section 2038 and of the regulations promulgated thereunder is that inclusion of trusts in a decedent's gross estate is to be measured by reference to the terms of the trust agreement, not by positing a spectrum of possibilities and contingencies.

under section 2038, we are not unmindful that this result may appear to some to be unduly harsh. Nonetheless, we reiterate that the language of that section is unequivocal, requiring only that a grantor reserve unto himself the *power* to control disposition of trust principal and income. Whether that power is ever exercised, or whether there was ever a real likelihood of its being exercised, are questions the statute removes from consideration.

It should be remembered, too, that Congress has provided substantial tax advantages to those who wish to dispose of property by way of a gift, and that long before these trust agreements were drafted it was clear that a grantor who retained any power to become a trustee would be deemed a trustee for purposes of computing estate tax liability.[19] Thus, the problem presented here could have been obviated by careful draftsmanship and closer attention to the laws of federal estate taxation—reasonable consideration to ask in return for a substantial tax exemption.

An order will be entered affirming the judgment of the district court.

VAN DUSEN, Circuit Judge, with whom ALDISERT and WEIS, Circuit Judges, join, dissenting:

I respectfully dissent. In construing the trust instrument, admittedly governed by New York law, " . . . it is the duty of the court to give effect to the intent with which the declaration of trust was made, so far as such intent can be collected from the whole instrument. (1 R.S. 748, § 2). And for this purpose reference may be had to the general scheme of the trust, its object and purpose as so represented." Knowlton v. Atkins, 134 N.Y. 313, 319, 31 N.E. 914, 916 (1892). See also Farmers' Loan & Trust Co. v. Callan, 246 N.Y. 481, 487, 159 N.E. 405 (1927); Matter of Fields, 302 N.Y. 262, 97 N.E.2d 896 (1951). Also, evidence of circumstances surrounding the creation of the trust is admissible where, as here, the meaning of the trust as to the trustee's power to name herself as trustee is uncertain and ambiguous. See Restatement of Trusts 2d, §· 24, comment (b), p. 67,[1] and § 38, comment (a), p. 103;[2] Spencer v. Childs, 1 N.Y.2d 103, 150 N.Y.S.2d 788, 789, 134 N.E.2d 60 (1956).

The following are among the items to be considered in construing the above intent. As noted by the majority, the decedent set up in 1955 the identical trusts for her grandchildren, the corpus of which were included in her estate for purposes of federal estate tax.[3]

"The creation of the trusts was motivated, at least in part, by the 1954 legislation making the annual $3,000 gift tax exclusion available in connection with certain forms of gifts in trust for minors. In 1954 the Code, for the first time, provided that, under certain conditions, gifts in trust for minors would not be considered gifts of future interests and thus would fall within the $3,000 annual gift tax exclusion. *See* 26 U.S.C. § 1622." (Note 3, majority opinion.)

"When [the decedent] died in September, 1965, . . . [the trusts] were valued at $808,018.52." (Page 482, majority opinion.)

" . . . [the decedent's] personal portfolio was managed by The Empire Trust Company [the corporate trus-

---

19. *See, e. g.*, Loughridge's Estate v. Commissioner of Internal Revenue, 183 F.2d 294 (10th Cir. 1950); Estate of Wilson, 13 T.C. 869 (1969).

1. The first sentence of this comment provides:

"In the interpretation of the words and other conduct of the settlor, circumstances throwing light upon the settlor's intention are relevant, and evidence of such circumstances is admissible except when excluded by the parol evidence rule, . . . . ."

2. The second sentence of the comment states:

"If the meaning of the writing is uncertain or ambiguous, evidence of the circumstances is admissible to determine its interpretation."

3. Two of such eleven identical trusts were created in 1961 and 1962.

tee], and she had no evident interest in corporate reports, proxy statements, financial journals, or the like. Her energies were devoted primarily to her family and to certain charities." (Page 485, majority opinion.)

Also, the district court found the following background facts:

"Mrs. Mathey originally had the trusts created upon the suggestion of her second husband, Mr. Dean Mathey who, at the time was chairman of the Board of Empire Trust Company. It was Mr. Mathey who actually supervised the creation of the trusts since Mrs. Mathey devoted her life to the care of her family and to certain charities and had little, if any, knowledge of investment or financial matters. [4a]

. . . . . .

" . . . Mrs. Mathey's personal characteristics indicate it was unlikely she would appoint herself trustee, . . . ." [8a]

In addition to the foregoing, the uncontradicted evidence showed that the decedent-grantor had no interest in, or experience with, investments and that the reservation of the right to change the trustee had been included in the trusts at the suggestion of her husband. Pages 34–37 of the transcript of May 26, 1971, make clear that Mr. Mathey had included in the trust the provision for change of the trustee so that the corporate trustee could be removed if it became too restrictive in its investment policy.[4] By having such a provision, Mr.

Mathey would have been able to tell the officers of the trustee that if they persisted in refusing to make what he considered prudent and desirable investments because of undue fear of possible surcharge, he would have to go to his wife and suggest a removal of the trustee. In his experience, when this possibility was suggested to the corporate trustee's officers, they would approve the investment (see, particularly, N.T. 34–35, 38–39).[5]

Experts for both plaintiff and defendant (Parsons and Bush, respectively) agreed that in the situation presented by this record, the object and purpose of these trusts were to make tax-free gifts to the donee-grandchildren and to remove the property from the taxable estate of the donor for estate tax purposes (N.T. 64 and 157; see also N.T. 29–30). New York courts, as well as this court, have recognized that the presumed intent of a decedent in transferring property by gift inter-vivos is to save estate taxes. See Dodd v. United States, 3 Cir., 345 F.2d 715, 718 & 719 (1965); In re Ossman's Will, 27 Misc.2d 632, 209 N.Y.S.2d 251 (Surr.Ct.1960); Matter of Wolf, 204 Misc. 356, 121 N.Y.S.2d 412 (Surr.Ct.), aff'd, 282 App.Div. 1018, 126 N.Y.S.2d 302 (1953), aff'd, 307 N.Y. 280, 121 N.E.2d 224 (1954); Matter of Peters, 204 Misc. 333, 88 N.Y.S.2d 142 (Surr.Ct.), aff'd, 275 App.Div. 950, 89 N.Y.S.2d 651 (1949).

The language of the trust instrument in the following respects indicates that the decedent-grantor did not intend to

---

4. Mr. Mathey testified that he had not even discussed this provision with the decedent, "Mrs. Mathey wasn't interested anyhow" (N.T. 35), and he went on to testify (N.T. 36):

"Q. Do you recall whether Mrs. Mathey ever read Exhibit P–1 or any of these other trusts?

"A. I am sure she didn't read it. 'You have to sign this, Helen. 'Okay, it is all done.'"

5. I cannot find in the record as a whole any "evidentiary support displaying some hue of

credibility," Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972), for this statement of the district court at page 6 of its opinion (8a) and believe that it is clearly erroneous:

"Indeed, he [Mr. Mathey] implied that when the original trusts were drawn up, he intended for the decedent to be able to appoint herself trustee (Tr. 42)."

In my view, the testimony of Mr. Mathey (over 80 years old) that she was to be trustee along with the bank, at N.T. 42–47, was clearly the result of confusion of this witness and is not credible.

reserve the right to appoint herself as trustee:

A. The language consistently referring to the trustee as "it."

B. The failure to include any provisions authorizing an individual trustee to employ investment advisors, accountants, etc., which a trustee with the lack of investment experience and knowledge of the decedent-grantor would clearly require.

C. The provision for fees in Article Sixth only for removed corporate trustees, as opposed to individual trustees.

In light of the foregoing principles of trust construction recognized by New York law, it is my view that the New York courts would not have permitted the grantor to serve as trustee of these trusts.[6] See City Bank Farmers Trust Co. v. McFadden, 65 N.Y.S.2d 395 (Sup. Ct.1946); Guaranty Trust Co. of New York v. Mackey, 178 Misc. 862, 36 N.Y. S.2d 535, 537 (Sup.Ct.1942); Application of Wehrli, N.Y.L.J., 11/5/70, p. 2, aff'd, 36 A.D.2d 488, 321 N.Y.S.2d 438 (1st Dept. 1971), aff'd without opinion, 30 N.Y.S.2d 510, 330 N.Y.S.2d 60, 280 N. E.2d 887 (1972).[7]

The Supreme Court of the United States has recently held in United States v. Byrum, 408 U.S. 125, 136, 92 S.Ct. 2382, 2390, 33 L.Ed.2d 238 (1972), that the word "right," as used in the estate tax statutes discussing the retention and reservation of "rights," "connotes an ascertainable and legally enforceable power" which the decedent-grantor in this case did not have under the above-cited New York cases. The Court also stated in the Byrum case supra at 147, 92 S.Ct. at 2396, in holding that no estate tax was due on the corpus of an inter-vivos trust:

"In none of the cases cited by the Government has a court held that a person has retained possession or enjoyment of the property if he has transferred title irrevocably, made complete delivery of the property and relinquished the right to income where the property is income producing."

The non-technical approach of Byrum, supra, has been used in other recent federal estate tax decisions. See Peoples Trust Co. of Bergen County v. United States, 444 F.2d 193, 199 (3d Cir. 1971);[8] Estate of James S. Todd, Jr., 57 T.C. 288 (1971), Acg. I.R.B.1973— 28.5.

I would vacate the district court order, remand, and direct entry of judgment for the plaintiffs.

---

6. The witnesses pointed out that if the grantor had been named as trustee, she would have been serving in that capacity at the age of 90, assuming that she had lived until all the trusts terminated, using language such as:

"Here is a woman with no business experience, no knowledge, no interest, according to the testimony given by Mr. Behr and Mr. Mathey, in financial affairs or investments, having none of the ordinary qualifications to be a trustee, and with death on her part almost certain to ensue before the falling in of these trusts."

7. The above cases and the testimony make clear the New York procedure for securing court approval at the time of appointing a successor trustee. Also, it is noted that considering the legal situation as of the moment before the grantor's death, she was then 74 and a New York court would not have approved an attempt that such a grantor be substituted in place of a corporate trustee, in view of the factual background of this trust.

8. ". . . [I]t is inconceivable that the courts of that state would permit a New Jersey trustee to pursue an investment policy designed to divert corpus from the remainderman to a life beneficiary."