OPINION OF THE COURT
Renee R. Roth, S.
This is a contested proceeding for the appointment of an administrator c. t. a. Testator, Abraham Rad, died in England on December 19, 1991, survived by his wife and three adult children, Nahid Rad Hauser, Davar Rad and Babak Rad. Offered for probate are two wills — one (the US will) disposes of testator’s United States property and the other (the International will) disposes of all his other property, except his assets located in England, which are governed by an English will that is not at issue here.
Although the probate proceeding is uncontested, testator’s children cannot agree on a fiduciary to succeed the nominated executor, Leo Schenker, who has renounced. No successor was named in either will. Two of decedent’s children, Nahid and Davar, seek letters of administration c. t. a. for themselves; the third child, Babak, a citizen and domiciliary of England, opposes both appointments and requests that the court appoint an independent party.
Under the US will, testator gave his son, Davar, stock in an Iranian company (which apparently has been nationalized by the Iranian government) and disposed of the remainder of his estate, in relevant part, as follows: one half, together with a leasehold interest in commercial real property located at 558 Seventh Avenue, to an existing inter vivas trust for the benefit of Nahid, and the other half and his partnership interest in property at 38 East 29th Street to an existing inter vivas trust for the benefit of Babak.
Pending the outcome of this litigation, limited letters of temporary administration were issued to Nahid for the sole purpose of managing the Seventh Avenue property and similar letters were issued to Babak, jointly with a New York resident, to manage the 29th Street property.
Under the governing statute, SCPA 1418, Nahid, a residu *231 ary beneficiary, has a prior right to be appointed administrator c. t. a. over Davar, a specific legatee. However, her brothers contend that she is unfit to serve because of drunkenness, dishonesty, improvidence, conflict of interest and her lack of impartiality and hostility towards them.
SCPA 707 sets forth the grounds for denying letters; SCPA 711 states the ground for removal of a fiduciary. Both statutes provide that one who "does not possess the qualifications required of a fiduciary by reason of substance abuse [formerly drunkenness], dishonesty, improvidence, want of understanding, or who is otherwise unfit for the execution of the office” is ineligible to act as a fiduciary (SCPA 707 [1] [e]; 711 [8]). The recent amendment to SCPA 707 (1) (e), adding the provision for denial of letters to one "who is otherwise unfit for the execution of the office”, was intended "to clarify the standard to be employed by the Surrogate in denying letters to one otherwise authorized to receive such letters and to expand the possible bases on which denial of letters might be grounded” (Second Report of EPTL-SCPA Legis Advisory Comm, 1993 McKinney’s Session Laws of NY, at 2240). The party alleging ineligibility has the burden of proof (Matter of Krom, 86 AD2d 689, lv dismissed 56 NY2d 505; In re Mecko’s Will, 70 NYS2d 41; Matter of Stege, 164 Misc 95).
Although the proof establishes that Nahid was drunk on at least four occasions during the past five years (one episode in 1989 resulted in her arrest in Illinois for driving while intoxicated), the evidence is insufficient to establish habitual substance abuse or that such abuse affects her ability to handle estate affairs so as to disqualify her from appointment as a fiduciary (Matter of Reichert, 34 Misc 288; Matter of Manley, 12 Misc 472; also cf., Matter of Cady, 36 Hun 122, affd 103 NY 678; Matter of Dolansky, 196 Misc 802).
The brothers’ allegation that Nahid should be disqualified because she allegedly stole $250,000 from their mother rests solely on their testimony that Nahid took the money without their mother’s knowledge and invested it in a now-defunct cosmetic business. Clearly, they have failed to sustain their burden of proof.
The brothers also contend that Nahid obtained $167,000 of estate funds from England without notice to them by representing that she was the temporary administratrix of decedent’s estate with full powers. The evidence, however, indicates that, to effectuate the transfer of some estate funds from *232 England to the United States, and at the request of English counsel, Nahid’s New York attorney forwarded a certificate of letters, bearing this court’s raised seal, which contained the following words "See copy of order granting letters of temporary administration”. The only representation by Nahid’s counsel was that the order was in full force and effect and had not been amended.
Nahid testified that she used the funds obtained from England to pay past-due rent and taxes owed on the Seventh Avenue property which was in imminent danger of being lost. It is noted that decedent’s International will provides that the international property shall be used to pay, in the following order, funeral expenses, debts, taxes and any mortgages on the Seventh Avenue property. However, Nahid’s use of the funds to pay the expenses on her legacy may have depleted the estate’s available cash thus preventing payment of estate taxes and other administration expenses. Although long overdue, it appears that no estate tax returns have been filed in any jurisdiction nor has any payment on account of estate taxes been made. It also appears that cash was needed to pay certain expenses of the partnership interest in the 29th Street property (bequeathed to Babak’s trust) which was in danger of being lost. Clearly, a fiduciary cannot pursue a course of action which places her own interests ahead of those of the other beneficiaries. The very nature of the responsibilities of a fiduciary requires that decisions be made fairly and impartially.
More troubling is the well-documented hostility that exists between Nahid and her brothers. Although such acrimony alone does not constitute grounds for disqualification as fiduciary (Matter of Flood, 236 NY 408; Matter of Lipsit, 50 Misc 2d 289; Matter of Miller, 48 Misc 2d 815, 819; see also, Matter of Stanley, NYLJ, Dec. 27, 1983, at 14, col 1; Matter of Schreiber, NYLJ, June 23, 1986, at 17, col 1; Matter of Mattin, NYLJ, June 27, 1990, at 29, col 6), disqualification is warranted if the disharmony jeopardizes the interests of the beneficiaries and the proper administration of the estate (Matter of Jurzykowski, 36 AD2d 488, affd 30 NY2d 510; Matter of Edwards, 274 App Div 244; Matter of Younker, 111 Misc 2d 599; Matter of Lipsit, 50 Misc 2d 289; Matter of Doerschuck, NYLJ, May 31, 1990, at 25, col 2; Matter of Miller, NYLJ, Aug. 7, 1985, at 14, col 2, reargued NYLJ, July 9, 1986, at 18, col 2, affd 132 AD2d 662). The proof suggests that because of her hostility and determination to control the *233 estate for her own benefit, Nahid will not be able to act impartially.
But, another more serious ground for disqualification is based on a threat Nahid made to Leo Schenker, the nominated executor. He testified that Nahid threatened to mutilate his wife unless he renounced his appointment as executor, and that, as a result of this threat, he decided not to serve. Nahid denies these charges and argues that because Mr. Schenker did not also resign as trustee of the inter vivas trusts his testimony is somehow flawed. However, Mr. Schenker, who has no discernible incentive to lie, was a credible witness while Nahid’s testimony on this issue was evasive and less than credible.
Although a person is not rendered incompetent to act as fiduciary by reason of an isolated act of wrongdoing, the serious nature of the threat combined with the obvious purpose of gaining control over the estate creates a reasonable concern that Nahid will not properly discharge the responsibilities of a fiduciary. Although Nahid’s substance abuse alone is not enough to disqualify her, the threats to Mr. Schenker together with her conflict of interest and hostility toward her brothers establish a pattern of behavior which renders her "unfit for the execution of the office”.
With respect to Davar’s application for letters, although he is a beneficiary under the will, the property bequeathed to him is apparently no longer an asset of decedent’s estate. His lack of pecuniary interest in the estate, coupled with his hostility, is a sufficient basis to deny letters to Davar (Matter of Fuchs, NYLJ, July 20, 1993, at 27, col 2; Matter of Jurzykowski, 36 AD2d 488, affd 30 NY2d 510, supra; Matter of Lipsit, 50 Misc 2d 289, supra; see also, Matter of Murphy, 304 NY 232).
Finally, although it is well settled that the selection of a fiduciary by a testator is not to be lightly disregarded and therefore a strong showing is required to deny letters testamentary (see, i.e., Matter of Leland, 219 NY 387; In re Mecko’s Will, 70 NYS2d 41, supra), the appointment of an administrator c. t. a. is governed by statute (SCPA 1418) and there is no inherent right, derived from nomination in the will, to administer the estate (Matter of Murphy, 304 NY 232, supra). Thus, although every inference in favor of eligibility should be given to the person chosen by testator, it would appear that there is no such requirement where the testator has not made any *234 selection and a statutory scheme governs. Furthermore, it is clear that decedent wanted his children to benefit from his estate but did not want them to administer the estate.
Based upon all the foregoing, letters of administration c. t. a. shall issue to the Public Administrator of the County of New York (SCPA 1418 [2]).
The proof also establishes that the propounded instruments are genuine, that they were validly executed and that at the time of execution decedent was competent to make a will and not under restraint (EPTL 3-2.1; SCPA 1408). Accordingly, the propounded instruments are admitted to probate.