This controversy is presented by a bill of complaint filed by the executor of the will of Alexander Horvath, the testator *Page 234 
having died February 3d 1940, at the age of seventy-nine. It involves the ownership of money standing to the credit of two savings accounts both opened in the name of "Alexander Horvath in trust for Helen Kahl" in which all deposits were Horvath's money; also the ownership of the balance remaining of the sum of $900 cash given by decedent to Helen Kahl a few weeks before his death. Mrs. Kahl is named as a defendant, as are three of Horvath's children who are residuary legatees under his will.
From and prior to the death of decedent's wife April 12th, 1934, to his death, Horvath lived in a two-family house he owned in Newark and Mrs. Kahl, who is his daughter, lived with her family and four children in the same house, paying rent to her father. Until September 11th, 1939, Horvath lived on the second floor and Mrs. Kahl and her family occupied the first floor. September 11th, 1939, Horvath went to a Newark hospital and there underwent a mastoid operation in two stages, and on his discharge December 27th, 1939, he lived in Mrs. Kahl's apartment and died there from a heart ailment. Much testimony was taken on what may be termed collateral issues, which I dispose of by stating that the evidence satisfies me that throughout the entire period the two savings accounts were in existence and the cash in question was given to Mrs. Kahl, Horvath had ample independent means for his support; that following his operation one side of his face was distorted because of paralysis of a facial nerve, but from (and prior to) 1934 he was of normal mental capacity up to two days before his death; that Mrs. Kahl was his favorite child and her care of him for years was assiduous; that their relations were close and intimate and he reposed trust and confidence in her; that she did not abuse or take advantage of that trust and confidence and never exercised a dominant influence over him; that the provision he attempted to make for her through the two savings accounts was wholly voluntary on his part; that Mrs. Kahl's relations with her brother and six sisters were not friendly but at no time did she use her father's affection for her to influence him in her favor and against them.
The two savings accounts will be considered first. One was *Page 235 
opened by Horvath November 17th, 1934, in a branch of Fidelity Union Trust Co. with his deposit therein of $100, at which time he signed a signature card and received a passbook. Thereafter he made nineteen deposits and no withdrawals and at his death $2,046.48 stood to the credit of the account. The other account was opened in Franklin Savings Institution where Horvath already had a savings account which stood in his name alone. August 31st, 1937, at his direction that account was changed by adding to his name the words "In trust for Helen Kahl" on his signature card and passbook, and the balance to the credit of his old account was transferred on the bank's books to the new trust account. That same day he made a deposit of $300 in that trust account and on June 5th, 1939, a further deposit of $138. No other deposits were made, there were no withdrawals and at his death $2,314.15 stood to the credit of the account. There is nothing on the signature card on which the account in the Fidelity bank was opened, to define or indicate the terms or conditions under which the account was to be held by the bank other than as appears from the name or title in which that account was opened. When Horvath transferred his individual account in the Franklin bank to a trust account, he signed and filed with that bank an agreement which reads as follows:
"This account and all moneys credited to it may be withdrawn upon the signature of the person in whose name the account is opened in trust for another. Upon the death of the person in whose name the account is opened in trust, the bank is authorized and directed to pay the entire balance of the account, together with interest, to the person in trust for whom the account is designated. * * *"
The passbooks for both banks contain the rules and regulations of the banks, among which is a provision that no money can be withdrawn from or deposited in the accounts without production of the passbooks.
The mere opening of the two accounts in Horvath's name in trust for Mrs. Kahl and nothing more, is insufficient to establish a gift or create a trust (Nicklas v. Parker, 71 N.J. Eq. 777) and the evidence must be examined to ascertain *Page 236 
whether, in connection therewith, Horvath had a donative intention and surrendered control over the money he deposited therein. The evidence shows that when the savings accounts were opened the passbooks were delivered to Horvath and that he had possession of them for some time thereafter. A witness (Miller) testified that at a family New Year's eve party at a tavern in December, 1937, Horvath told the witness he "had left" two trust funds for Mrs. Kahl in a bank or banks and that in March, 1938, Horvath made a similar statement to the same witness. The effect of that testimony was sought to be overcome by evidence, which I regard as entitled to no weight, that Horvath was intoxicated on the first occasion. Another witness (Heyl) testified that in the latter part of 1938 Horvath showed him three passbooks, two of which were passbooks in the Fidelity and Franklin banks, and said: "I am going to put it in trust for Helen. I am going to get interest on these books. I am putting these in Helen's name," which testimony was not discredited. Mrs. Kahl's husband testified to conversations had with Horvath in Mrs. Kahl's presence in which Horvath told of having opened accounts for Mrs. Kahl in the two banks; that in July, 1939, after Horvath had had a heart attack, Horvath gave the two passbooks to Mrs. Kahl in the witness' presence telling her "to take the two books and hide them and not to say anything to nobody;" that Mrs. Kahl then placed the books in a chest of drawers in her apartment; that he did not see them again until two days after Horvath's death. Mrs. Kahl was called as a witness in her own behalf and an offer was made by her counsel to have her testify and be cross-examined as to transactions with her father concerning the bank accounts, but objection to such testimony was sustained. She did testify that at the time of her father's death she had the passbooks in a drawer in her home. Mr. and Mrs. Kahl testified that Horvath kept his will, his papers, other bank passbooks and valuables in a "strong box" in a locked closet in a room in his apartment; that the day he died they took the strong box from the closet and hid it under the coal in their cellar and went to Mr. Roder (now complainant's counsel) to ask him what to do with Horvath's *Page 237 
valuables; that Mr. Roder advised them that a safe deposit box should be rented in the joint names of complainant and Mrs. Kahl (both of whom were named as executors in Horvath's will), in which should be placed everything belonging to Horvath, or on which his name appeared; that pursuant to Mr. Roder's instructions Kahl proceeded to remove the strong box from under the coal, and while so engaged Mrs. Kahl came to the cellar with the passbooks in question and they and the contents of the strong box were placed in an envelope; that they went with complainant to the Fidelity Bank February 5th, rented a safe deposit box in the joint names of complainant and Mrs. Kahl and placed the envelope therein. No claim to ownership of the passbooks was made by Mrs. Kahl until several days thereafter whereupon, on Mr. Roder's advice, Mrs. Kahl renounced her right to qualify as executrix under Horvath's will.
That Mrs. Kahl did not inform complainant or Mr. Roder that the passbooks had been given to her until several days after they were placed in the safe deposit box, is of slight moment. She and her husband never had a bank account of their own, they had had no business experience and they may have been unaware of her right to retain possession of the books in view of Mr. Roder's instructions to them that every thing bearing Horvath's name should be placed in that box, and she waived no right by lodging them in a place to which she had joint access with complainant. If the books rightfully belonged to her, it is because of Horvath's intention that they should, and her assertion of claim thereto at that time would not have strengthened her right.
That Horvath opened the accounts in the form he did, deposited his money therein and made no withdrawals therefrom, is evidence that he had a donative intention toward Mrs. Kahl with reference to the money so deposited, especially when he maintained other savings accounts in his individual name from which he made withdrawals for his own use, and the testimony of Miller, Heyl and Kahl also shows that he had. Even had he reserved the right to receive interest accruing on the accounts, such reservation would not invalidate a gift of principal (Sibley v. Somers, 62N.J. *Page 238 Eq. 595; National Newark and Essex Banking Co. v. Rosahl,97 N.J. Eq. 74) but he withdrew no interest. The evidence is that Horvath had a heart attack in July, 1939, which, particularly at his age, may well have caused him to think of approaching death. Having after his wife's death opened the bank accounts with a donative intent toward his daughter and considering his affection for her, it would be but natural that at that time he would, as Kahl testified he did, place the passbooks in his daughter's possession. By so doing he carried out his intention to make an absolute gift to her, and he stripped himself of control over the accounts. While mere delivery of the books to her did not transfer full control to her, because she could not make withdrawals without Horvath's signature, that concerned the banks only and did not prevent delivery operating as a then present gift as between Horvath and Mrs. Kahl. Long Branch Banking Co.
v. Winter, 112 N.J. Eq. 218. The books having been handed to her, the presumption is that they remained in her possession thereafter. She testified she had them the day Horvath died and Kahl's testimony shows they were not in Horvath's strong box placed under the coal that day. Complainant and other defendants direct attention to entries in the passbooks made after July, 1939 — in the Fidelity bank three of deposits and one of interest, and in the Franklin bank two of interest — and they argue that since all deposits were of Horvath's money and Mrs. Kahl did not identify the deposit slips which accompanied the deposits as being in her handwriting, that those slips were made out by Horvath and he must have presented the passbooks to the banks the days the entries were made therein. But such is not a necessary conclusion. Mrs. Kahl may have taken the deposit money to the bank, or Horvath may have requested her to give him the Fidelity book for the purpose of making deposits, and a bank official may have made out the deposit slips. So far as interest credits are concerned, Mrs. Kahl could have taken the books to the banks to have such entries made. In any event had Mrs. Kahl given Horvath the books for any purpose, he must have returned them to her because they were not in Horvath's possession at his death. I conclude that the bank accounts *Page 239 
in question were opened by Horvath with a donative intent toward Mrs. Kahl as to all deposits made therein and that the passbooks evidencing those accounts were delivered by him to Mrs. Kahl in completion of an absolute gift. The right of Mrs. Kahl to the funds in question may, on the evidence and circumstances to which I have referred, be also maintained on the theory of a valid and enforceable trust in her favor. Long Branch Banking Co. v.Winter, supra; Trust Company of New Jersey v. Farawell,127 N.J. Eq. 45.
By enacting P.L. 1932 ch. 40 (R.S. 17:9-4) I think our legislature declared an intention to change the rules of law laid down by our courts with respect to gifts and trusts, so far as those rules had theretofore been applied to the mere opening of a bank account in the name of A in trust for B. That act was in effect when the accounts in question were opened and it must be presumed that Horvath opened them with knowledge of the law. I quote so much of the act as is pertinent:
"Whenever any deposit shall be made with any savings bank, * * * by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust shall have been given in writing to the savings bank * * *, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, shall be paid to the person in trust for whom the said deposit was made, * * * and the legal representatives of the deceased trustee shall not be entitled to the funds so deposited nor to the dividends or interest thereon notwithstanding that the funds so deposited may have been the property of the trustee; * * *."
I am of the opinion that the statute does not apply to the Franklin bank account because notice of the terms of the trust upon which that account was opened was given the bank, and that it does apply to the Fidelity bank account. In Thatcher v.Trenton Trust Co., 119 N.J. Eq. 408, and Travers v. Reid,Ibid. 416, both involving bank accounts of the type opened by Horvath in the Fidelity bank, it was said that the statute is ambiguous and unconstitutional and insufficient to change the law of trusts as established by our courts. I have great respect for the learning and ability of the Vice-Chancellors who wrote the opinions in those cases and I *Page 240 
agree with them that the act is inartistically drawn; that it is unconstitutional if it intends to provide that notwithstanding an agreement entered into between the trustee and the beneficiary defining, as between themselves, the terms upon which such an account is opened, of which agreement no notice is given the bank, the beneficiary on the death of the trustee, shall be entitled to the funds deposited in the account notwithstanding that the agreement provides otherwise. I cannot agree with them that the act is an unconstitutional attempt to amend the statute of wills and the statute of intestate succession in that the title of the act fails to disclose such purpose. I regard the act as intended merely to change and define the law with respect to trusts set up in the particular form and manner stated in the act. The act is somewhat involved in its phraseology but I think its intent plain and that it is my duty to give effect to such intent, which I find to be that when one (donor) opens an account in a savings bank in his name in trust for a named beneficiary (donee) and there is no evidence as to the intent of the donor which can be shown after the donor's death, other than as can be gathered from the form in which the account was opened, the intent of the donor shall be taken to be to create an immediately effective trust for the benefit of the donee, over which the donor reserves a power of revocation, as evidence of which he retains possession of the passbook, and that so much of the funds deposited in that trust account over which the donor has failed to exercise his power of revocation shall belong to the donee free from any claim thereto on the part of the donor's legal representatives. In such a case the only effect of the donor's death is to terminate his power of revocation. His death does not complete the trust but renders it irrevocable. Field v.Fidelity Union Trust Co., 108 Fed. Rep. 2d 521, reversed on other grounds, 61 Sup. Ct. 176; 85 L.Ed. 176. I therefore hold that Mrs. Kahl is entitled to the funds in the Fidelity bank account by virtue of said act.
Mrs. Kahl's right to the fund in Franklin bank also arises out of a contract Horvath made with the bank for her benefit when he opened that account. He delivered his property to *Page 241 
the bank under the terms of a special form of contract by which the bank by accepting, agreed to hold the deposits then and thereafter made with it on the terms stated, namely, Horvath to have the right to make withdrawals and the bank to pay Mrs. Kahl any balance not withdrawn, and thus the bank became debtor to both. The passbook issued by the bank was but a record of credits and debits. The gift to Mrs. Kahl under the contract being not of the book but of the money shown by the book to be in the account, it was not necessary to the validity of the bank's contract under which Mrs. Kahl was entitled to a beneficial interest in the money, that she should have possession of the book. The provision that no withdrawals or deposits could be made without presenting the book was mainly for the protection of the bank when called on for payment. New Jersey Title, c., Co. v. Archibald, 91 N.J. Eq. 82; Commercial Trust Co. v. White, 99 N.J. Eq. 119-129.
Nor was it necessary to the validity of such contract, so far as Mrs. Kahl's rights thereunder are concerned, that she should have had notice of the contract which created a trust in her favor.Janes v. Falk, 50 N.J. Eq. 468; Bankers Trust Co. v. Bank ofRockville, c., 114 N.J. Eq. 391-407.
Finally, as to the balance remaining of $900 cash given by Horvath to Mrs. Kahl. Two withdrawals, one January 3d 1940, for $400 and the other January 6th, 1940, for $500, were made by Horvath from a savings account standing in his name alone, both sums being received at the bank by Mrs. Kahl. Her claim is that her father gave her the $400 to pay taxes on two pieces of real estate he owned, a water bill and lodge dues, and a few days later he gave her the $500 to pay a doctor's bill and told her to keep the balance of the $900 for herself. Out of the $400 she paid $221.02 but she did not pay the doctor's bill because it had not been rendered. At her father's death she had $678.98 remaining which she placed in the safe deposit box before mentioned, along with the Fidelity and Franklin bank passbooks. A doctor's bill for $250 was presented after Horvath's death and her claim is for the difference between $250 and $678.98 or $428.98. The burden of proof is on her to establish by *Page 242 
satisfactory evidence that Horvath had a donative intention toward her with respect to such balance and I cannot find that she has sustained such burden.
Mrs. Kahl was barred from testifying as to this transaction with her father and the only evidence to support her claim is the testimony of her husband. He testified that the $400 was withdrawn from the bank to pay Horvath's debts, after which Horvath said that sum would be insufficient because the doctor's bill would be about $500 and for that purpose the $500 was later withdrawn; that at the time of the withdrawals nothing was said about Mrs. Kahl keeping any of the money for herself, but a few days later Horvath said she should keep what was left after the doctor's bill was paid. It is evident that Horvath did not know how far $400 would go toward paying his debts other than the doctor's bill; he certainly over-estimated the amount required, if Mrs. Kahl paid all bills she was directed to pay, because she expended but $221.02 out of that sum, and the testimony is not that he said she should have the balance remaining out of $400. He believed the doctor's bill would be about $500 but he was mistaken and therefore he could not have intended any definite remainder of that sum for Mrs. Kahl, surely not so much as $250. I do not consider the evidence convincing of a gift to Mrs. Kahl for any part of the $900 and I think that at her father's death, had she really believed herself entitled to the balance of cash in her hands, she would not voluntarily and without making any claim thereto, have placed that cash in the safe deposit box — cash being so different from passbooks which bore her father's name. I conclude that she should account for and pay to complainant so much of $900 as was not expended by her. *Page 243