Marien E. DURST and G. Chester Durst, Executors of the Estate of John E. Dieteman, Deceased

v.

The UNITED STATES of America, Appellant.

No. 76–1938.

United States Court of Appeals, Third Circuit.

Argued April 1, 1977.

Decided July 7, 1977.

William F. Illig, MacDonald, Illig, Jones & Britton, Erie, Pa., for appellees.

Blair A. Griffith, U. S. Atty., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, William S. Estabrook, Gilbert S. Rothenberg, Attorneys, Tax Division, Dept. of Justice, Washington, D. C., for appellant.

Before SEITZ, Chief Judge, ALDISERT and HUNTER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This appeal is from a final judgment of the district court ordering the United States to refund estate taxes in the amount of $77,939.42 together with interest to Marien E. Durst and G. Chester Durst, Executors of the Estate of John E. Dieteman, deceased. The refund is equal to the tax deficiency assessed against and paid by the plaintiff-executors attributable solely to their failure to include as part of his gross estate the value of an irrevocable inter vivos trust created by Dieteman.

The Internal Revenue Service determined that the value of the trust was includable under §§ 2036(a)(2) and 2038(a)(1) of the code. Those sections provide that the value of property transferred inter vivos shall nevertheless be includable in the decedent's gross estate when he retained the right, whether alone or in conjunction with others, either to thereafter designate the persons who will share in the trust or their degree of participation or to affect the enjoyment of the trust through a power to alter, amend, revoke or terminate the trust. The taxpayers concede that under the terms of the trust, the trustees retain some of the powers enumerated above so that if the settlor could appoint himself co-trustee, the value of the trust was includable in the estate. The single issue which divides the parties is whether settlor retained the power to appoint himself trustee.

 It is settled, as a matter of federal law, that the intent of the settlor to exercise any of the retained powers enumerated in §§ 2036 and 2038 is irrelevant. The inquiry is limited to whether or not the settlor reserved the power, and the answer to this question is furnished by the state law which governs the trust, here the law of Ohio. *See Mathey v. United States*, 491 F.2d 481 (3d Cir. 1974) (in banc). The taxpayers concede that under Ohio law a settlor may reserve a power of self appointment. It is also clear that Article Sixth A of the trust instrument, which is quoted *infra*, empowers the settlor to appoint one or more individual trustees, although it neither expressly reserves nor withholds the power of self appointment. The district court examined the instrument as a whole together with extrinsic evidence, and concluded that under Ohio law the provision would be construed to deny the power of self appointment. We now review the legal correctness of that determination.

### A.

 It appears that Ohio follows the position of the Restatement (Second) of Trusts § 4(1957),[1] that the terms of the

---

1. Terms of the Trust
 The phrase "terms of the trust" means the manifestation of intention of the settlor with respect to the trust expressed in a manner which admits of its proof in judicial proceedings.

trust are to be ascertained by reference to the settlor's intent as expressed in the instrument and such extrinsic evidence as is admissible. *See, e. g., Provident Savings Bank & Trust v. Pettengill*, 143 N.E.2d 884, 887 (Ohio Com.Pl. 1957) (if settlor's intent in using certain words or phrases was somewhat different from their accustomed meaning his intent must prevail; extrinsic evidence admissible to determine whether term "issue" embraced adopted grandchildren).

The government accepts the proposition that Ohio law controls and that under Ohio law the settlor's intent governs the construction of the terms of the trust, but nevertheless, citing *Mathey, supra*, appears to argue that, as a matter of federal law, the denial of the power must expressly appear in the instrument. The government's reliance on *Mathey* is misplaced. In *Mathey* we dealt with a trust instrument which permitted the settlor to appoint successor trustees but which neither expressly reserved nor withheld a self-appointment power. The only evidence of an intent to withhold a self-appointment power was use of the word "it" to describe successor trustees, which, it was argued, limited successors to corporate trustees. We held that the finding of the district court that "it" is used by draftsmen to refer to individual as well as corporate successors was not clearly erroneous, and affirmed the conclusion that a self-appointment power had been reserved.

■ It is implicit in *Mathey*, and we so hold, that the power of self-appointment need not be expressly withheld (though careful draftsmen will continue to do so) so long as under the controlling state law the power of self appointment would not be permitted under the terms of the trust indenture. It follows, therefore, that the district court was correct in following the law

of Ohio which requires examination of the instrument as a whole to determine whether it evinced an intent by settlor to deny himself the power of self appointment, notwithstanding that Article Sixth did not expressly prohibit settlor from doing so. As to the admissibility of the extrinsic evidence of intent, that is also a matter of state law, *see, e. g., Craft v. Commissioner*, 68 T.C. 249 (1977). Since the government does not challenge the admissibility of the evidence on appeal we assume it is properly a part of the record.

### B.

■ It is urged by the taxpayers that an intent to withhold the power of self appointment is evident from certain provisions of the trust which would on a contrary assumption appear to be unnatural or absurd. Taxpayers argue that if the instrument contemplated that settlor could be a trustee, Article Sixth A would not have been written, as it was, to require the settlor-trustee to take action after his own demise. Article Sixth A provides:

> The Settlor reserves the right at any time during his life to appoint one or more Individual Trustees to act with the Corporate Trustee by giving written notice of such appointment, signed by the settlor, to the Corporate Trustee. *After the death of the Settlor* the Individual Trustee may appoint a successor Individual Trustee by giving written notice thereof to the Corporate Trustee, or by will. (emphasis added)

Once settlor dies his power qua settlor to appoint additional trustees terminates. He cannot, therefore, appoint additional trustees in his will for it speaks as of the time of his death. *See In re Estate of Evans*, 165 Ohio St. 27, 133 N.E.2d 128, 130 (1956). The individual trustee can appoint a succes-

Comment:

. . . . .

d. *Trust created inter vivos by written instrument.* If a trust is created by a transaction inter vivos and is evidenced by a written instrument, the terms of the trust are determined by the provisions of the instrument as interpreted

in the light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible because of the Statute of Frauds, the parol evidence rule, or some other rule of law. As to the Statute of Frauds, see §§ 39–52. As to the parol evidence rule, see § 38.

sor trustee after the death of the settlor, and he may do so by giving written notice to the corporate trustee or by will.

If the settlor were a trustee he could not appoint a successor in his capacity as trustee until after his own death. The government argues that the settlor qua trustee could accomplish this by a provision in his will naming a successor trustee. This necessarily means that he would have named a successor prior to his death, however, with the effective date of the office commencing upon his death. Such a course would contradict the language of the provision which requires that the power of appointment vests in the individual trustee only after the death of the settlor.

Even if the government's construction were not technically incorrect, it cannot be gainsaid that to so construe it would interpose a difficulty of interpretation which would not likely have existed if the draftsman contemplated the settlor as trustee. On the other hand, the provision reads naturally and unambiguously when one assumes that the draftsman contemplated that the settlor could not appoint himself a trustee. We regard this provision, drafted by experts, to be strong evidence that the settlor did not contemplate reservation of a power to appoint himself trustee. The significance of this inconsistency is augmented by the fact that it appears in the very provision in which settlor reserved the power to appoint additional trustees—presumably a point at which the draftsman had in mind the scope of that power.

Taxpayers and the district court cite other provisions as well which they think create the same kind of inconsistencies if one regards the settlor as having retained a self appointment power. We think that none of them have independent significance, however, since the operation of each is not necessarily inconsistent with the exercise of a self appointment power. Nevertheless, one might reasonably conclude that a natural reading of each yields the impression that settlor and trustee could not be the same person, and this impression may permissibly add some small weight to the sig-

nificance of the inconsistency contained in Article Sixth.

The district court received documentary evidence consisting of correspondence among the settlor, his estate planners, and the IRS contemporaneous with the preparation and execution of the trust instrument and his gift tax returns filed immediately thereafter. The correspondence shows that decedent, a resident of Pennsylvania, hired a New York estate planning firm to advise him. Pursuant to their advice, he established both an irrevocable trust, which is the subject of this suit, and a larger revocable trust, the value of which taxpayers included in the decedent's estate for estate tax purposes. In creating the irrevocable trust, settlor utilized an Ohio corporate trustee, which could not be removed during the settlor's life and which could be succeeded only by an Ohio corporation. The indenture provides that Ohio law shall govern in order to obtain the benefit of accumulation of income provisions which are recognized in Ohio as well as certain state tax advantages. The settlor's married daughter and her descendents were the beneficiaries of income during her lifetime, while a generation skipping device was used to transfer the corpus to the daughter's issue and their spouses.

It is apparent from the correspondence that settlor was keenly aware and concerned about reducing federal estate taxes, and that the irrevocable trust was created primarily to effectuate that goal. Moreover, settlor and his estate planners explicitly regarded the irrevocable trust as divorcing from settlor the control over the disposition of corpus or income. Settlor's understanding of the irrevocability of the trust and his lack of control is confirmed by the filing of a gift tax return and payment of a substantial gift tax in 1952. This tax is not due on incomplete gifts such as a trust in which "a reserved power gives the donor the power to name new beneficiaries or to change the interests of the beneficiaries as between themselves unless the power is a fiduciary power limited by a fixed or

ascertainable standard." Treas.Reg. 25.-2511–2(c) (1958).[2]

## C.

 Viewing the terms of Article Sixth A in light of the inconsistency apparent in that provision if construed to include a power of self appointment, and the language employed in the instrument as a whole together with the extrinsic evidence, we are persuaded, though the case is a close one, that an Ohio court would declare that the settlor lacked the power to appoint himself trustee under the instrument. We therefore conclude that the settlor did not reserve the power which under §§ 2036 or 2038 would require inclusion of the value of the trust in the decedent's estate.

The judgment of the district court will be affirmed.[3]

---

2. Although the regulation was adopted in 1958 under the 1954 code, the statutory language which it explicates under the 1954 code, 26 U.S.C. § 2511(a), is the same as that which governed transfers under the 1939 code. 26 U.S.C.A. § 1000(b) (1939 code).

3. In view of our disposition of the case, we need not consider the alternative holding of the district court that Ohio law would require an express reservation of a power of the settlor to appoint himself a trustee with discretionary powers over corpus and income.