ESTATE of Semo A. SULOVICH, Deceased, Helen Unkovich, Executrix, Petitioner-Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

No. 76–2517.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 10, 1978.
Decided Nov. 30, 1978.

Myron C. Baum, Richard W. Perkins, Scott P. Crampton, Gilbert Andrews, Asst. Atty. Gen., Tax Division, U. S. Div. of Justice, Washington, D. C., Mary L. Jennings, Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent-appellant.

D. Alden Newland, Honolulu, Hawaii, for petitioner-appellee.

Before PHILLIPS, Chief Judge, and LIVELY and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

The issue on this appeal is whether the decedent, at his death, possessed sufficient powers over certain savings accounts to require the sums in those accounts to be included in his gross estate under Sections 2036 and 2038 of the Internal Revenue Code.[1] The decedent, Semo A. Sulovich, a Yugoslavian immigrant, was the co-owner and operator of a restaurant in downtown Dallas for approximately thirty years. At his death, most of Sulovich's assets were held in accounts at various Dallas banks. Some of those accounts he held jointly with his niece, Helen Unkovich. Certain other accounts were held by Sulovich as trustee for his niece and each of her four children. Mrs. Unkovich brought this action as Executrix after the Commissioner determined a deficiency in Federal estate taxes due from Sulovich's estate in the amount of $27,-145.16. The deficiency resulted from the exclusion of the trustee accounts from the decedent's gross estate. Sulovich's gross estate was valued in excess of $190,000.00.

The United States Tax Court held that decedent had made a completed gift of the accounts and they were, therefore, not includible in the decedent's gross estate. 66 T.C. 250 (1976). The Commissioner appeals.

We reverse.

1. All section references are to the Internal Revenue Code of 1954.

## I

On March 2, 1959, the decedent opened five savings accounts at Dallas Federal Savings and Loan Association (Dallas Federal) in his name as trustee for his niece and each of her four children. In connection with the establishment of each of these accounts, decedent executed a signature card, which reserved in him the right, during his lifetime, to assign, transfer, sell or withdraw the funds in each account. The signature cards also authorized the bank to act without further inquiry in accordance with writings bearing decedent's signature. Each of the signature cards contained the following language:

> It is expressly understood that Semo Sulovich shall have the exclusive right during his lifetime, to assign, transfer, and sell the Share Account to be issued under the application on the reverse side hereof, and to withdraw the repurchase value of the said share account. In the event of death or incapacity to act of Semo Sulovich then and in that event the beneficiary, whether a minor or an adult, shall have the right to withdraw the repurchase value of said account to be so issued.

On December 21, 1965, decedent wrote a letter to his niece[2] in which he stated his intention that she use the money in the trust accounts for the needs of her family. Decedent further indicated that he was going to send the niece the five trust account passbooks after the first of the year. Thereafter, decedent sent the five account books to his niece. After his restaurant was robbed in 1967, decedent requested duplicate passbooks from the bank, mistakenly believing the originals were stolen in the robbery. He forwarded these duplicate passbooks to his niece.

Dallas Federal obtained the social security numbers of decedent's niece and her four children for the trust accounts. Annual statements from the bank indicating the interest attributable to each account were sent to the niece. She reported the interest attributable to the account held in trust for her on her Federal income tax return.[3] No withdrawals were made from the trust accounts during decedent's life. Except under rare circumstances, Dallas Federal would not permit withdrawals without a passbook.

The signature card contracts were in effect at decedent's death and he could have withdrawn the money from the accounts, as trustee, so long as he was in possession of the account passbooks. Furthermore, decedent had full control over the beneficiaries' access to the funds in the trust accounts by the terms of the signature cards, even though the decedent's niece was in possession of the passbooks. At all times it was necessary for decedent to authorize any withdrawal from the trust accounts and, without such permission, no funds could be paid to the beneficiaries.

## II

The Commissioner contends that decedent retained sufficient power over the five savings accounts to require their inclusion in his gross estate under §§ 2036 and 2038. Section 2036(a)(2)[4] requires that the

---

2.  DEAR HELEN & SARA:

    Today I received your card and letter in it. What in the H- you going to borrow money when you got in Bank & Savings & Loan, what's wrong with you and Mike? I give you that money for that purpose and here you borrow money and pay interest, what kind of monkey business it that? I am going to send you after New Year's all the books of the Trust fund for the children. You mentioned to send me some kind of book. What the H- I want with them here. I have another account in one of the banks here, is nearly $11,000.00 thousand dollars, that I'm going to withdraw after January 1st, because I don't get any business from them, they moved 3 blocks further. Keep your book and write checks when you need it, for Ann and rest of the family. I am going to sleep little.

    > Your Uncle,
    > SEMO

3.  The interest attributable to the other accounts was not reported by the beneficiaries as income because they had insufficient income and did not file income tax returns.

4.  Section 2036 reads in pertinent part:
    § 2036. Transfers with retained life estate
    (a) General rule.—The value of the gross estate shall include the value of all property to

value of property transferred in trust be included in the settlor's gross estate where at the time of his death the settlor retains the discretionary right, either alone or in conjunction with another, to designate the person who will possess or enjoy the property. This power to designate includes the power to deny the trust beneficiaries the privilege of immediate enjoyment and to condition their enjoyment upon their surviving the termination of the trust. *United States v. O'Malley*, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966); *Estate of O'Connor v. Commissioner of Internal Revenue*, 54 T.C. 969, 973 (1970). Section 2038(a)(1)[5] requires inclusion of the value of property transferred in trust in the settlor's gross estate where at the time of his death he retains the discretionary power to terminate the trust and distribute the proceeds to the beneficiaries. The settlor's power to terminate contingencies upon which the beneficiaries' rights to enjoyment of the trust depend has been considered a power to "alter, amend, revoke or terminate" within the meaning of § 2038(a)(1). *Lober v. United States*, 346 U.S. 355, 74 S.Ct. 98, 98 L.Ed. 15 (1953); *Commissioner of Internal Revenue v. Estate of Holmes*, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228 (1946); *Estate of O'Connor, supra. See Estate of Bischoff v. Commissioner of Internal Revenue*, 69 T.C. 32, 46–47 (1977).

The Tax Court found the savings account trusts valid revocable trusts at their inception, citing *Land v. Marshall*, 426 S.W.2d 841 (Tex.1968); and *Westerfield v. Huckaby*, 462 S.W.2d 324 (Tex.Civ.App.1970),

*aff'd*, 474 S.W.2d 189 (Tex.1971). The court recognized that the signature card contracts between the decedent and Dallas Federal delineated decedent's control over the accounts and allowed him to deal with the accounts as his own property, which included making gifts of the accounts.

The Tax Court further held that when the decedent delivered the passbooks to his niece, he intended to make a present gift of the accounts to the trust beneficiaries. The court noted that to make a valid inter vivos gift of a savings account held by the depositor as trustee for another the donor must intend to transfer all dominion and control over the property to the donee and there must be some delivery of the property, citing *O'Donnell v. Haladay*, 152 S.W.2d 847 (Tex.Civ.App.1941); *Fasano v. Meliso*, 146 Conn. 496, 152 A.2d 512 (1959); *Hickey v. Kahl*, 129 N.J.Eq. 233, 19 A.2d 33 (1941). The court found strong evidence of decedent's intent by his demonstrated affection for his niece and her children, by the decedent's apparent intention never to disturb the funds in the trusts, by the fact that he never made any withdrawals from the trust accounts, and by decedent's letter to his niece in December 1965 followed by his delivery of the passbooks to her. The Tax Court concluded that since decedent made a completed gift, which necessarily requires the transferring of all dominion and control over the property to the donee, decedent retained no power over the accounts which would require them to be included in his gross estate for Federal estate tax purposes.

---

the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

    (1) the possession or enjoyment of, or the right to the income from, the property, or

    (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

**5.** SEC. 2038. REVOCABLE TRANSFERS.

  (a) IN GENERAL—The value of the gross estate shall include the value of all property—

    (1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

## III.

The ultimate finding of fact by the Tax Court—that the decedent did not possess dominion and control over the savings accounts at the time of his death, within the contemplation of §§ 2036 and 2038, because he had made completed inter vivos gifts thereof—we conclude to be clearly erroneous under the record in this case. *See Commissioner of Internal Revenue v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). The conclusion of the Tax Court is contradicted not only by the express language of the signature cards, but also by the testimony of the officer of Dallas Federal, who advised decedent in the establishment of the trust accounts. William C. H. Jackson, retired Secretary and Treasurer of Dallas Federal, who had known decedent ever since he opened his first account with Dallas Federal in 1948, testified that under the practice of the Association with respect to the restrictions contained in the language of the signature cards, a beneficiary could have withdrawn funds from the accounts only on the authority of Sulovich. Mr. Jackson said: "[H]e would have to withdraw it, but he would have to endorse it . . . as Trustee." This witness further testified that the beneficiaries could have withdrawn funds from the accounts before the death of Sulovich ". . . only through him. If they were ready to go to college and *he wanted them to have it*, he could withdraw it as Trustee . . . ." (Emphasis added.)

The record discloses an expressed intention on the part of the decedent that the funds in the accounts be used only for the education and necessities of the beneficiaries. By the exercise of frugality the decedent had built up a substantial estate. The Dallas Federal officer described Sulovich as "tight" and "conservative." It is inconceivable, on the record before us, that Sulovich would have permitted any withdrawals by any beneficiary for any purpose which he considered to be extravagant or unwise. Under the terms of the signature cards, the *unrestricted* right to use the funds in the accounts was not conferred upon the beneficiaries.

A literal reading of §§ 2036 and 2038 of the Internal Revenue Code mandates that any property transferred by a decedent be included in his gross estate where the decedent retains any power of control. *United States v. O'Malley, supra*, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145 (1966); *Lober v. United States, supra*, 346 U.S. 355, 74 S.Ct. 98, 98 L.Ed. 15 (1953); *Estate of Bischoff v. Commissioner of Internal Revenue, supra*, 69 T.C. 32 (1977); *Estate of O'Connor v. Commissioner of Internal Revenue, supra*, 54 T.C. 969 (1970). This principle applies even though the transfer takes the form of an ostensibly completed gift. In *Kasishke v. United States*, 426 F.2d 429, 434 (10th Cir. 1970), the court stated with respect to the application of § 2036:

> All sorts of complicating circumstances may be resorted to, but once the substance of the transaction is determined to meet these requisites, mere form will not avail. And even though it may appear that a position partakes of substance, if its recognition would be defeating to the very purpose of the Act it is not readily to be accepted. *United States v. Allen*, 293 F.2d 916 (10th Cir.), cert. denied, 368 U.S. 944, 82 S.Ct. 378, 7 L.Ed.2d 340 (1961).

*See also United States v. Estate of Grace*, 395 U.S. 316, 321, 89 S.Ct. 1730, 23 L.Ed.2d 332 (1969).

The facts in this case present a situation where the substance of the transfer, and not the form, must control. Although decedent delivered the bank account passbooks to his niece, he retained significant powers over those accounts, in accordance with the terms of the enforceable signature card contracts. The mere delivery of the trust account passbooks from decedent to his niece did not nullify the enforceability of the provision of the signature cards. Therefore, the characterization of the transfer from the decedent to the niece of the passbooks as a gift can not be dispositive of federal estate tax liability.

In *Hickey v. Kahl, supra*, relied upon by the Tax Court in this case, the court found

delivery of trust account passbooks from the decedent/trustee to the beneficiary constituted a present gift of the accounts. The court recognized, however, that "mere delivery of the books to [the beneficiary] did not transfer full control to [the beneficiary], because she could not make withdrawals without [the trustee's] signature . . . ." 19 A.2d at 37. The *Hickey* court minimized the import of this retained signature card authority for purposes of finding a present gift. The court suggested that the signature card contract was simply a bank matter and it did not affect the rights of the other parties involved. For Federal estate tax purposes, however, retained control over bank account trusts through the existence of valid signature card contracts cannot be dismissed so easily.

Even after the decedent delivered the bank account passbooks to his niece, he retained the power to terminate the trusts and distribute their proceeds to the respective beneficiaries. By the terms of the signature card contract, decedent at all times prior to his death had absolute discretionary authority over the immediate access to and enjoyment of the funds in the accounts by the beneficiaries. In effect, the decedent retained both the power to accelerate the beneficiaries' enjoyment of the trust accounts and the power to veto any request by the beneficiaries to immediate enjoyment of the trusts. The powers retained by the decedent through the continued validity of the signature card contracts fall squarely within the scope of §§ 2036 and 2038.

Under the circumstances, it is immaterial how the transfer of the passbook from the decedent to his niece is characterized, or whether decedent's power could be exercised only in favor of the beneficiaries of the trust accounts. "[A] donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control" necessary to avoid federal estate taxes under Sections 2036 and 2038. *Commissioner of Internal Revenue v. Estate of Holmes*, 326 U.S. at 487, 66 S.Ct. at 260. See *Helfrich's Estate et al. v. Commissioner of Internal Revenue*,

143 F.2d 43, 46 (7th Cir. 1944); *Estate of Bischoff v. Commissioner of Internal Revenue*, 69 T.C. at 46–47 (1977). Nor is it relevant whether decedent had the intent to exercise any of the retained powers enumerated in §§ 2036 and 2038; the determining question is whether the settlor reserved any of those powers. *Durst v. United States*, 559 F.2d 910, 911 (3rd Cir. 1977).

In *Estate of Curry v. United States*, 409 F.2d 671 (6th Cir. 1969), we held that for federal estate tax purposes an estate created in United States Series E bonds was a matter of contract. To like effect see *United States v. Chandler*, 410 U.S. 257, 93 S.Ct. 880, 35 L.Ed.2d 247 (1973). In the present case we hold that the issue of estate tax liability is controlled by §§ 2036 and 2038 and the *contract* between the decedent and Dallas Federal, as expressed by the language of the signature cards.

We conclude that the decedent retained sufficient power and control over the five trust savings accounts to require their inclusion in his gross estate, in accordance with §§ 2036 and 2038. Accordingly, the decision of the Tax Court is reversed. No costs are taxed. The parties will bear their own costs on this appeal.