**In re WERNERSTRUCK, INC.**

**and**

**In re BRANDON FOODLINER, INC.,**
**a/k/a Arlyn's IGA Foodshop.**

**Bankruptcy Nos. 89–40009–PKE,**
**90–40569–PKE.**

United States Bankruptcy Court,
D. South Dakota.

Jan. 24, 1991.

J. Bruce Blake, Blake Law Offices, Sioux Falls, S.D., for Wernerstruck, Inc.

A. Thomas Pokela, Sioux Falls, S.D., for Brandon Foodliner, Inc.

Charles L. Nail, Jr., Asst. U.S. Trustee, Sioux Falls, S.D.

Bruce J. Gering, Staff Atty., Office of the U.S. Trustee, Sioux Falls, S.D.

PEDER K. ECKER, Bankruptcy Judge.

The above-captioned debtors brought the same issue before this Court of what constitutes disbursements for the computation of United States Trustee (UST) fees under 28 U.S.C. § 1930(a)(6). The Court combines adjudication of both in this letter decision which constitutes findings of fact and conclusions of law pursuant to Bank.R. 7052. The instant matters are core matters under 28 U.S.C. § 157(b)(2)(A) and (B). The debtors' circumstances are similar, but not identical.

Wernerstruck, Inc. (Wernerstruck), during late 1988 and 1989, sold stored crops amounting to approximately $896,000. Wernerstruck gave its bank a large check, and the bank's decision to cease working amicably with Wernerstruck caused it to file Chapter 11. A new banking arrangement was subsequently entered into. Pursuant to a settlement agreement, extra payments made to the bank were applied to the amount owing but could be drawn on for operating expenses by the debtor. Wernerstruck tendered to the bank about $336,978 in advance payments to gain advantage of interest payments applied because the debtor-in-possession account earned no interest. Wernerstruck withdrew approximately $200,000–$300,000 for farming operations. Wernerstruck asks whether the netting out of advance payments tendered against amounts withdrawn by the debtor is proper for determining the amount of disbursements for calculation under 28 U.S.C. § 1930(a)(6). The UST argues that disbursements constitute any payment of a debtor to a creditor, irregardless of Wernerstruck's ability to borrow against advance payments to the bank. Wernerstruck maintains that taxing the UST fee on any type of payment made acts as a penalty or a duplicative fee on amounts deposited and subsequently withdrawn, since the bank lacked an absolute right to those funds.

Brandon Foodliner, Inc. (BFI), like Wernerstruck, raises the disbursements issue. BFI operates a grocery store. A stipulation between the grocer's principal creditor and the debtor requires BFI to maintain a certain minimum level of inventory. Replacement of goods, to achieve the minimum level of inventory, occurs many times in a grocery store because there is a high turnover in volume coupled with a low price markup. BFI maintains one level of inventory throughout the month, replenishing it as customers purchase goods off the shelf. BFI reasons that its inventory should be subject to the disbursement computation only once, at the mandatory inventory level.

█ UST fees are calculated pursuant to 28 U.S.C. § 1930(a)(6). UST fees are computed on "disbursements." 28 U.S.C. § 1930(a)(6). The fees increase in percentage as a debtor's disbursements rise, resembling a gross tax on disbursements. The legislative history does not discuss disbursements. The UST must make a good faith determination of debtor's disbursements in calculating the amount of quarterly fees. *In re Flowers by Mike & Ray, Inc.*, 95 B.R. 31, 34 (Bankr.D.Md.1988). A debtor's failure to make outstanding quarterly payments due the UST will not always prevent granting a debtor's motion for voluntary dismissal of the case. *Matter of Markhon Indus., Inc.*, 100 B.R. 432, 436 (Bankr.N.D.Ind.1989); *In re Rose*, 86 B.R. 439, 442 (Bankr.E.D.Pa.1988).

■ Interpretation properly begins with the express language of the statute. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). 28 U.S.C. § 1930(a)(6) expressly calculates the UST fee on a debtor's "disbursements." A fundamental canon of statutory construction is that words shall be interpreted pursuant to their ordinary, common meaning. *Perrin v. U.S.*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). In general, "disbursement" means payment, to put out, or expend. 12A Words and Phrases, Disbursement (1954 & 1990 supp.); Black's Law Dictionary (5th ed. 1979). Disbursement's common and ordinary meaning shall be applied by the Court.

■■ The scant case law on what constitutes a disbursement follows the plain language of the statute. 28 U.S.C. § 1930(a)(6)'s "disbursements" are not limited to postpetition payments made to prepetition creditors, but rather encompass all expenses paid by a debtor. *In re Ozark Beverage Co., Inc.*, 105 B.R. 510 (Bankr.E. D.Mo.1989). In addition, amounts disbursed by a party other than the debtor are "constructive disbursements" which are not subject to Section 1930(a)(6)'s disbursement calculation. *In re Hays Builders, Inc.*, 95 B.R. 79 (Bankr.W.D.Tenn.1988), *amended on reconsideration*, 96 B.R. 142 (Bankr.W.D.Tenn.1989).

The UST System is self-funded, but not a profit tool for the Government. *Hays*, 96 B.R. at 144. Equity says an undue hardship should not stand in the way of reorganizing, and no gutting of the UST System occurs by recognizing a "constructive disbursement" exception. *Id.* The court, in *Hays*, looked to 28 U.S.C. § 1930(a)(6)'s express language, equity, and examined the funding purpose to hold that the tendering of funds from a non-debtor does not constitute disbursements for the purpose of calculating the UST's fee.

■ A court must carefully scrutinize a UST fee request in order to prevent the UST from overreaching to get a larger share of the bankruptcy estate than it is entitled to. *In re Juhl Enters., Inc.*, 921 F.2d 800 (8th Cir.1990) (Heaney, J., dissenting). The UST System is designed to be self-funding, and an ordinary and common definition of disbursement should permit an adequate level of funding.

■ It is axiomatic that a disbursement, or funds transfer, must be available for the creditor to freely use in order for the creditor to fully receive the benefit or use of the money. Full enjoyment or benefit resulting from a transfer is a concept commonly utilized in determining gift or estate taxes. 26 U.S.C. §§ 2036–2038. A disbursement involves a transfer of money. For tax purposes, a donor, who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake, has not divested himself of the degree of control necessary to have alienated himself from the property. *Commissioner of Internal Revenue v. Holmes' Estate*, 326 U.S. 480, 487, 66 S.Ct. 257, 260, 90 L.Ed. 228 (1946); · *Helfrich's Estate v. Commissioner of Internal Revenue*, 143 F.2d 43, 46 (7th Cir.1944); *Estate of Bischoff v. Commissioner of Internal Revenue*, 69 T.C. 32, 34 (1977). The reservation of any significant powers over the transfer of property retains an interest in the transferor. *Sulovich's Estate v. Commissioner of Internal Revenue*, 587 F.2d 845, 848 (6th Cir.1978); *Durst v. U.S.*, 559 F.2d 910, 911 (3d Cir.1977). Substantial economic benefit, rather than technical vesting of title, is the focus of whether a transfer is complete. *Holmes' Estate*, 326 U.S. at 486, 66 S.Ct. at 260. The right to withdraw or revoke prohibits a transfer from being complete. *Helfrich's Estate*, 143 F.2d at 46. The insight provided by Title 26 law helps ascertain what constitutes a bona fide disbursement under 28 U.S.C. § 1930(a)(6).

■ By analogy, the tax code and case law establish that a complete disbursement theory has a basis in law. A creditor's substantial economic benefit from a transfer is a factor in determining whether an assessable disbursement for UST fee purposes occurred. An unconditional and actual disbursement is implied in the common definition of a disbursement. Tendering money must be without reservation to qualify as a disbursement, because only

through an absolute and unconditional transfer can the creditor fully enjoy the benefit and use of the money. Moreover, where the debtor merely places funds in an account subject to withdrawal, the debtor has not relinquished full control over the money, and no complete expenditure occurred.

■ A transfer with "strings" attached, whereby the debtor transferor has a contractual right to receive the money back, is not a complete disbursement. Such a situation is similar to a trust arrangement where the creditor holds funds which may have to be relinquished at a later date. Holding something of value, which may be released later, is not a complete transfer. *In re Larsen*, 122 B.R. 733 (Bankr.D.S.D.1990) (deed in escrow arrangement acted as adequate protection collateral). There is no reason why a debtor attempting to increase the chance of reorganizing successfully by placing funds in an interest-advantageous account should be penalized by the form of the transaction.

■ The Court concludes that 28 U.S.C. § 1930(a)(6)'s disbursements include all money absolutely and unconditionally transferred by a debtor for any expense until a plan is confirmed or the case is converted or dismissed, whichever occurs first. Any less than complete transfer of money is not a bona fide disbursement for UST fee purposes. A disbursement, like most transfers subject to a fee or tax, must be complete to constitute a bona fide disbursement. The failure to adjust, prorate, or otherwise take into account the actual activity subject to the fee results in erroneous assessments, since items are tallied which should not be. Thus, the wrongful inclusion of non-disbursement transfers wrongfully bloats the UST fee, giving the UST a larger share of the bankruptcy estate than it is entitled to.

28 U.S.C. § 1930(a)(6) ties the UST fee to the generation of disbursements which correlates to the overall business activity. This procedure does increase UST fees where the debtor's business constitutes a high volume or great turnover of inventory. Tying UST fees to bona fide disbursements is reasonable given that the UST may need to invest more of its own re-

sources in policing a business which is active rather than dormant. Moreover, Congress varied the quarterly fees on a graduated scale, as the fees are tied to the amount of disbursements made, with ceilings at various levels and a fee cap. There is a basic difference between filling a gap left by Congress's silence and rewriting a statute enacted by Congress. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 98 S.Ct. 2010, 2015, 56 L.Ed.2d 581 (1978). To go beyond concluding that Congress intends the UST System be funded by a fee based on actual, irrevocable disbursements would be to impermissively enact law rather than properly serve as a vehicle for statutory interpretation. *Id.* at 626, 98 S.Ct. at 2015; *Ozark*, 105 B.R. at 512. The statute requiring a debtor to pay greater fees in a high-volume, low-profit business diminishes the amount available to reorganize because expenditures for the replacement of inventory are subject to the UST fee. Nonetheless, such remedy lies with a congressional change of the statute. All that remains is to apply the law to the facts.

■ BFI's payments to replace goods bought by shoppers were irrevocable, actual purchases. BFI's contractual obligation to its principal creditor to maintain certain stock level is irrelevant given that shelves must be stocked to continue sales and are required to draw customers into the business. The Court concludes that all of BFI's payments on expenditures qualify as disbursements under 28 U.S.C. § 1930(a)(6).

■ Wernerstruck's advance payments to the bank bore the heavy string of being subject to withdrawal for operating expenses at the debtor's leisure. The retention of the significant power to remove the funds deposited constitutes a revocable transfer of the funds, which does not qualify as a bona fide disbursement pursuant to Section 1930(a)(6). Wernerstruck and the bank entered into an enforceable contract which permitted withdrawals of advance payments. The Court concludes that, to the extent that advance payments exceed withdrawals by the debtor, such amount constitutes a disbursement for UST fee purposes. But for the contractual obli-

gation of the bank to return advance payments to the debtor, all amounts Wernerstruck tendered to the bank would constitute disbursements under 28 U.S.C. § 1930(a)(6). The enforceable, contractual obligation to return the funds rendered the transfer of advance payments, with reserve, as inchoate disbursements. While the bank had possession of these funds, such funds were required to be returned upon debtor's demand.

The flexible and unusual financial arrangement of Wernerstruck and the bank resulted from an attempt to save the debtor's interest expense because the debtor-in-possession account accrued no interest. It would violate the common definition of disbursement and would be a blatant thrusting of form over substance to hold that Wernerstruck's progressive reorganization financing advance payments arrangement constitutes disbursements. A plausible hypothetical proves the point. Wernerstruck's unequivocal withdrawal right could permit an advance deposit of $14,000 on Monday, revocation of the $14,000 on Tuesday for operating expenses, and, on Wednesday, after realizing the expense was not needed, it could redeposit and leave the $14,000 in the bank. The UST's broad definition would assess its fee on $28,000, which churns disbursements by doubling the quarterly fee assessable under 28 U.S.C. § 1930(a)(6). The common definition of disbursement and the nonprofit, self-funding nature of the fee would conclude a $14,000 disbursement occurred. A bona fide disbursement, subject to the computation of the UST fee under 28 U.S.C. § 1930(a)(6), is computed by netting

out the deposit of advance payments, in which Wernerstruck has an enforceable right to withdraw, against any such withdrawals.

The Court applies the plain and common meaning to 28 U.S.C. § 1930(a)(6)'s "disbursements." Under federal law, particularly federal tax law applicable by analogy given the tax-like fee assessment of the statute and the need to hone out the scope of a disbursement, a disbursement constitutes an actual payment by the debtor given without enforceable reservation at law. Both BFI and Wernerstruck paid out or disbursed money pursuant to 28 U.S.C. § 1930(a)(6). BFI irrevocably paid to replace grocery items sold. All of BFI's payments constitute disbursements pursuant to the statute. Wernerstruck, in contrast, tendered funds to the bank with the express contractual right to withdraw advance deposits for operating expenses. The distinction between the two debtors is that Wernerstruck's deposits retained a significant string which prevented the bank from full, unequivocal, beneficial use of the funds. Only the net advance payment amounts, that being advance payments tendered less withdrawals made by contractual right, qualify as bona fide disbursements under 28 U.S.C. § 1930(a)(6).

Mr. Blake shall submit an appropriate order in the Wernerstruck case, and Mr. Nail shall submit an appropriate order in the Brandon Foodliner case.